**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DMITRY BANDURIN, *et al.,* | |
| *Plaintiffs* | Case No. 1:19-cv-00255 |
| v. | Hon. Manish S. Shah |
| AEROFLOT RUSSIAN AIRLINES, *et al.,* | |
| *Defendants.* | |

**DEFENDANT PUBLIC JOINT STOCK COMPANY'S «AEROFLOT - RUSSIAN AIRLINES»  MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT PURSUANT TO <u>RULES 12(b)(2) AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE</u>**

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................................1

FACTUAL BACKGROUND ....................................................................................................2

     A.     Jurisdictional Facts ...................................................................................2

     B.     Substantive Factual Allegations. ...............................................................3

ARGUMENT .............................................................................................................................4

I.     Legal Standards. ................................................................................................4

     A.     12(b)(2) Standard. .....................................................................................4

     B.     12(b)(6) Standard. .....................................................................................5

II.     Because Aeroflot Is Not Subject To Personal Jurisdiction In Illinois, Plaintiffs' Claims Should Be Dismissed Pursuant To Federal Rule 12(b)(2). .................................................5

     A.     Aeroflot is not subject to general personal jurisdiction in Illinois because it is not "essentially at home" here. ..........................6

     B.     Aeroflot is also not subject to specific personal jurisdiction because Hanson, Izenov, Berezkina, and the Dzugkoeva Plaintiffs' claims do not arise from or relate to any of Aeroflot's contacts with Illinois. ...................................................7

          1.     Hanson and Izenov. ....................................................................8

          2.     Berezkina. ....................................................................................9

          3.     The Dzugkoeva Plaintiffs. ........................................................10

III.     In The Alternative, Plaintiffs' Class Definitions Should Be Stricken Because They Include Putative Class Members With Similarly Jurisdictionally Deficient Claims. .................11

IV.     Plaintiffs' Montreal Convention Claims Should Be Dismissed Pursuant to Rule 12(b)(6) ..........................................................................14

     A.     Plaintiffs Do Not State Claims Under Article 19 of the Montreal Convention in Counts One – Five. .........................................15

          1.     Because Plaintiffs' Article 19 Claims Are Not Premised on Delay (Or Are Not Asserted Against Aeroflot At All), Counts One Through Five Should Be Dismissed. ...........................................16

          2.     Even if Plaintiffs Stated Article 19 claims in Counts One – Five (they did not), Plaintiffs Cannot Recover for Non-economic Damages

Under Article 19 and Economic Damages Under Article 19 are Limited to 4150 Special Drawing Rights Per Passenger. ...................................17

B. Plaintiffs Do Not State Claims Under Article 17 in Counts Seven, Eight and Ten. ...................................................................................................................18

1. Plaintiffs Hanson and Izenov Do Not State Claims for Destruction of Baggage Under Article 17 in Counts Seven and Eight and Article 22 Does Not Provide a Right of Action. ...............................................18

2. Plaintiff Bandurina Does Not State a Claim for Personal Injury Under Article 17 of the Montreal Convention in Count Ten and No Claims Can be Alleged Under Article 21 and EU Regulation 889/2002. ...................................................................................................21

a. Plaintiff Bandurina does not allege a physical injury .........................23

b. Plaintiff Bandurina does not allege the accident took place on board the aircraft or in the course of operations of embarking or disembarking. ...........................................................................25

V. This Court Should Dismiss Plaintiffs' Breach of Contract Claim (Count Six) For Failure to State A Claim. .......................................................................................26

VI. The Court Should Dismiss Plaintiffs' Civil RICO Claim (Count Nine) For Failure To State A Claim. .......................................................................................27

A. Plaintiffs Fail to Allege Sufficient Facts to Establish a Distinct "Enterprise." ..........28

B. The Complaint Fails to Allege that Aeroflot Engaged in a Pattern of Racketeering Activity, or Even a Single Predicate Act. ....................................................30

C. Plaintiffs' Civil RICO Claim Fails Because They Allege Only a Foreign, But Not a Domestic, Injury. ....................................................................................32

CONCLUSION ...................................................................................................34

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.,*
751 F.3d 796 (7th Cir. 2014).................................................................................7

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997).............................................................................................12

*America's Health & Resource Center, Ltd. V. Promologics, Inc.,*
2018 WL 3474444 (N.D. Ill. July 19, 2018).................................................. 12, 13

*Anderson v. Logitech, Inc.,*
No. 17 C 6104, 2018 WL 1184729 (N.D. Ill. Mar. 7, 2018) ............................. 13

*Anza v. Ideal Steel Supply Corp.,*
547 U.S. 451 (1991).............................................................................................30

*Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp.,*
885 F.3d 1090 (7th Cir. 2018) ..................................................................... 32, 33

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...................................................................................5, 25, 26

*Baker v. IBP, Inc.,*
357 F.3d 685 (7th Cir. 2004)......................................................................... 28, 29

*Bascuñán v. Elsaca,*
874 F.3d 806 (2d Cir. 2017) ...............................................................................33

*Bassam v. Am. Airlines,*
287 F. App'x 309 (5th Cir. 2008) .......................................................................18

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)...............................................................................................5

*BNSF Railway Co. v. Tyrrell,*
137 S. Ct. 1549 (2017) ..........................................................................................6

*Bonte v. U.S. Bank, N.A.,*
624 F.3d 461 (7th Cir. 2010).................................................................................5

*Bortz v. Bank of Am., N.A.,*
No. 16-CV-5338, 2016 WL 7104288 (N.D. Ill. Dec. 6, 2016) ...........................26

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.,*
    137 S. Ct. 1773 (2017) ................................................................................ 4, 7, 12

*Burke v. 401 N. Wabash Venture, LLC,*
    No. 08 CV 5330, 2010 WL 2330334 (N.D. Ill. June 9, 2010) ......................... 26

*Camasta v. Jos. A. Bank Clothiers,*
    761 F.3d 732 (7th Cir. 2014) .............................................................................. 5

*Carey v. United Airlines,*
    255 F.3d 1044 (9th Cir. 2001) .......................................................................... 24

*Carey v. United Airlines, Inc.*
    77 F. Supp. 2d 1165 (D. Or. 1999) .................................................................. 24

*Cedric Kushner Promotions, Ltd. v. King,*
    533 U.S. 158 U.S. 158, 161 (2001) .................................................................. 28

*Daimler AG v. Bauman,*
    134 S. Ct. 746 (2014) ......................................................................................... 6

*Debernardis v. NBTY, Inc.,*
    No. 17 C 6125, 2018 WL 461228 (N.D. Ill. Jan. 18, 2018) ............................ 13

*Eastern Airlines, Inc. v. Floyd,*
    499 U.S. 530 (1991) .............................................................................. 14, 22, 23

*Eke v. Deutsche Lufthansa,*
    No. CV 13-11099-GAO, 2013 WL 12201891 (D. Mass. Oct. 2, 2013) ............ 17

*El Al Israel Airlines, Ltd. v. Tseng,*
    525 U.S. 155 (1999) ..................................................................................*passim*

*Fednav Int'l Ltd. v. Cont'l Ins. Co.,*
    624 F.3d 834 (7th Cir. 2010) ............................................................................ 27

*Fortres Grand Corp. v. Warner Bros. Entm't Inc.,*
    763 F.3d 696 (7th Cir. 2014) .............................................................................. 5

*Ginsberg v. Am. Airlines,*
    No. 09 CIV 3226 LTS KNF, 2010 WL 3958843 (S.D.N.Y. Sept. 27, 2010) ..... 21

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
    564 U.S. 915 (2011) ...................................................................................... 4, 7

*Hansen v. Delta Airlines,*
    No. 02 C 7651, 2004 WL 524686 (N.D. Ill. Mar. 17, 2004) ........................... 24

*Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago*,
  747 F.2d 384 (7th Cir. 1984)..............................................................................28

*Henson v. CSC Credit Servs.*,
  29 F.3d 280 (7th Cir. 1994).................................................................................14

*Houston v. Fifth Third Bank*,
  No. 18-CV-5981, 2019 WL 1200574 (N.D. Ill. Mar. 14, 2019) .......................26

*Kipp v. Ski Enterprise Corp. of Wisconsin, Inc.*,
  783 F.3d 695 (7th Cir. 2015)..................................................................................6

*KM Enters., Inc. v. Global Traffic Techs., Inc.*,
  725 F.3d 718 (7th Cir. 2013)..................................................................................4

*Lee v. Am. Airlines Inc.*,
  355 F.3d 386 (5th Cir. 2004)................................................................................17

*Longo v. Air France*,
  No. 95CV0292 BDP, 1996 WL 866124 (S.D.N.Y July 25, 1996)......................23

*Marks v. Virgin Atlantic Airways Ltd.*,
  No. 04 Civ. 0251(SAS) 2004 WL 1574637 (S.D.N.Y. July 14, 2004) ..............23

*McDonald v. Schnecker*,
  18 F.3d 491 (7th Cir. 1994)..................................................................................30

*McDonnell v. Nature's Way Prods., LLC*,
  No. 16 C 5011, 2017 WL 4864910 (N.D. Ill. Oct. 26, 2017)............................13

*Mervyn v. Atlas Van Lines, Inc.*,
  13 C 3587, 2013 WL 5519405 (N.D. Ill. Oct. 2, 2013).....................................28

*MG Design Associates v. CoStar Realty Information, Inc.*,
  267 F. Supp. 3d 1000 (N.D. Ill. 2017)...................................................................7

*Midwest Grinding Co. v. Spitz*,
  976 F.2d 1016 (7th Cir. 1992) ........................................................................30, 31

*Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. Of Houston Metroplex, P.A.*,
  623 F.3d 440 (7th Cir. 2010)..................................................................................7

*Morgan, Lewis & Bockius v. City of E. Chicago*,
  401 Ill. App. 3d 947 (1st Dist. 2010) .....................................................................4

*Narayanan v. British Airways*,
  747 F.3d 1125 (9th Cir. 2014) ..............................................................................15

*Nat'l Tech., Inc. v. Repcentric Sols., No. 13 C 1819,*
    2013 WL 6671796 (N.D. Ill. Dec. 18, 2013) ........................................................26

*Orrington v. Scion Dental, Inc.,*
    No. 17-CV-00884, 2017 WL 5569741 (N.D. Ill. Nov. 20, 2017).......................19

*Paradis v. Ghana Airways Ltd.,*
    348 F. Supp. 2d 106 (S.D.N.Y. 2004), *aff'd*, 194 F. App'x 5 (2d Cir. 2006) ....................................15

*Practice Mgmt Support Servs., Inc. v. Cirque du Soleil, Inc.,*
    No. 14 CV 02032, 2018 WL 1255021 (N.D. Ill. Mar. 12, 2018) .......................13

*Pumputyte v. United Airlines, Inc.,*
    No. 16 C 4868, 2018 WL 1240314 (N.D. Ill. Mar. 9, 2018) .............................20

*Reeves v. Ernst & Young,*
    507 U.S. 170 (1993)...........................................................................................28

*Richmond v. Nationwide Cassel LP,*
    52 F.3d 640 (7th Cir. 1995)...............................................................................29

*RJR Nabisco, Inc. v. European Cmty.,*
    136 S. Ct. 2090 (2016) ................................................................................. 28, 32

*Santangelo v. Comcast Corp.,*
    No. 15-CV-0293, 2017 WL 6039903 (N.D. Ill. Dec. 6, 2017) ..........................14

*Schroeder v. Lufthansa German Airlines,*
    875 F.2d 613 (7th Cir. 1989)............................................................................25

*Sedima v. Imrex Co.,*
    473 U.S. 479 (1985)...........................................................................................27

*Shabotinsky v. Deutsche Lufthansa AG,*
    245 F. Supp. 3d 1018 (N.D. Ill. 2017).............................................................15

*Shah v. Pan Am. World Servs., Inc.,*
    148 F.3d 84 (2d Cir. 1998) ...............................................................................14

*Shifrin v. Compagnie Nationale Air France,*
    No. 99 C 5427, 2001 WL 204801 (N.D. Ill. Mar. 1, 2001) ..............................16

*Slaney v. Int'l Amateur Athletic Fed'n,*
    244 F.3d 580 (7th Cir. 2001).............................................................................31

*Tamburo v. Dworkin,*
    601 F.3d 693 (7th Cir. 2010)...............................................................................4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ...................................................................................................... 14

*U.S. v. Daniel*,
   749 F.3d 608 (7th Cir. 2014) ........................................................................................ 31

*uBid, Inc. v. GoDaddy Grp., Inc.*,
   623 F.3d 421 (7th Cir. 2010) .......................................................................................... 4

*United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v.*
   *Walgreen Co.*,
   719 F.3d 849 (7th Cir. 2013) .................................................................................. 28, 29

*Valentine v. WideOpen W. Fin., LLC*,
   288 F.R.D. 407 (N.D. Ill. 2012) ................................................................................... 14

*Vumbaca v. Terminal One Grp. Ass'n L.P.*,
   859 F. Supp. 2d 343 (E.D.N.Y. 2012) .......................................................................... 17

*Walden v. Fiore*,
   571 U.S. 277 (2014) ............................................................................................... *passim*

*Walz v Clickair SA*,
   62009CC0063 ............................................................................................................... 22

*Warden v. McLelland*,
   288 F.3d 105 (3d Cir. 2002) ......................................................................................... 31

*Wolgel v. Mexicana Airlines*,
   821 F.2d 442 (7th Cir. 1987) .................................................................................. 15, 16

*Worix v. MedAssets, Inc.*,
   857 F. Supp. 2d 699 (N.D. Ill. 2012) ........................................................................... 19

*Zubko v. Aeromexico*,
   No. 17-CV-04391, 2018 WL 3732688 (N.D. Ill. Aug. 6, 2018) .................................. 25

**Statutes**

735 ILCS 5/2-209 ............................................................................................................... 4

18 U.S.C. § 1341 .............................................................................................................. 31

18 U.S.C. § 1343 .............................................................................................................. 31

18 U.S.C. § 1961 .............................................................................................................. 30

18 U.S.C. § 1961(4) .......................................................................................................... 28

18 U.S.C. § 1961(5) .......................................................................................................... 30

18 U.S.C. § 1964(c) ...................................................................................................................32

28 U.S.C. § 2072(b) ...................................................................................................................12

**Rules**

Fed. R. Civ. P. 23(d)(1)€ ..........................................................................................................13

Fed. R. Civ. P. 23(d)(1)(D) ........................................................................................................13

**Other Authorities**

Convention for Int'l Carriage by Air, S. Treaty Doc. No. 106-45, 1999 WL 33292734
(May 28, 1999) ................................................................................................................ 14, 15

Convention for the Unification of Certain Rules Relating to International
Transportation by Air (Oct. 12, 1929), 49 Stat. 2000, T.S. 876 (eff. Oct. 29, 1934) ......................14

EU Regulation 889/2002 is available at https://eur-lex.europa.eu/legal-
content/EN/TXT/?uri=CELEX%3A32002R0889 ..........................................................................22

# INTRODUCTION

In this putative class action, five groups of Plaintiffs[1] assert claims against two airlines, Defendant Public Joint Stock Company «Aeroflot - Russian Airlines» ("Aeroflot"), incorrectly named herein as "Aeroflot Russian Airlines," and Defendant Finnair O.Y.J, based upon different factual scenarios involving different international flights. Plaintiffs seek statutory and other damages under the Montreal Convention for the Unification of Certain Rules for International Carriage by Air ("Montreal Convention") for delays in their international travel and, in some cases, for delayed arrival of checked baggage at their final destination. Plaintiffs also claim that Aeroflot breached a "voluntarily assumed" contractual duty by failing to allow them to board their scheduled flights and by failing to provide care and assistance during these delays. The Second Amended Complaint ("SAC") also includes an claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO").

Plaintiffs' factually and legally baseless claims are all subject to dismissal. First, Hanson, Izenov, Berezkina, and the Dzugkoeva Plaintiffs have not alleged a single fact to establish that the Court can exercise personal jurisdiction over Aeroflot here in a manner that comports with the United States Constitution's due process guarantees. Aeroflot is a Russian public joint stock company, and Illinois is neither its headquarters nor its principal place of business. Moreover, these plaintiffs' factual allegations plainly show that the conduct they challenge in their myriad claims is entirely unconnected with the Illinois forum. Indeed, the SAC is devoid of non-conclusory allegations setting forth any supposed contacts between Aeroflot and Illinois.

The SAC also fails to state a single viable substantive claim. Plaintiffs' claims under Article 19 of the Montreal Convention are claims for nonperformance of the contract of carriage rather than

---

[1] The five "groups" are (1) Dmitry Bandurin, Svetlana Bandurina, and Alexander Bandurin (the "Bandurin Plaintiffs"), (2) Brent Hanson ("Hanson"); (3) Madina Dzugkoeva, Albina Tolparova, and their minor child, Lana Zangieva (the "Dzugkoeva Plaintiffs"); (4) Yesdualtet Izenov ("Izenov"); and (5) Nina Berezkina ("Berezkina").

delay, and are not actionable under Article 19 of the Montreal Convention. Plaintiffs fail to allege that their baggage was damaged, lost or destroyed, or, in the case of Izenov, that he provided timely notice to Aeroflot of any damaged luggage – both fatal to Article 17 claims. Plaintiff Bandurina does not allege a physical injury that took place on board an aircraft or in the course of embarking or disembarking, therefore she cannot maintain an Article 17 claim for personal injury. Additionally, Plaintiffs simply restate their Article 19 claims as breach of contract claims, but never identify the specific contractual provision that they claim was breached – a necessary element to state a plausible breach of contract claim. Finally, Plaintiffs fail to properly plead many of the essential elements of a civil RICO claim.

Aeroflot therefore respectfully requests that this Court dismiss the Complaint in its entirety pursuant to Rules 12(b)(2) and 12(b)(6). In the event that any of Plaintiffs' claims survive, Aeroflot requests that this Court strike Plaintiffs' class definitions to the extent they are overly broad and include putative class members whose claims do not arise out of or relate to Aeroflot's contacts with Illinois.

## FACTUAL BACKGROUND

### A.     Jurisdictional Facts.

As Plaintiffs acknowledge, Aeroflot is a Russian company domiciled in the Russian Federation—that is, Russia is Aeroflot's principal place of business and where it is headquartered. (Dkt. 7 ¶ 29.) Other than this, Plaintiffs' only other jurisdictional allegations related to Aeroflot are (1) that Aeroflot is "doing business within the jurisdiction of the United States District Court of the Northern District of Illinois" (*id.*), and (2) that Aeroflot is "soliciting airline passengers by selling airfare tickets" and "conducting [its] business of air transportation within the State of Illinois." Plaintiffs also conclusorily claim that Aeroflot maintains "at least minimum contacts" with Illinois through availing itself of Illinois' air travel markets. (*Id.* ¶ 36.) The SAC is devoid of any factual

description of contacts between Aeroflot and the Illinois forum, whether related or unrelated to Plaintiffs' claims.

### B.  Substantive Factual Allegations.[2]

Although each of the five "groups" of Plaintiffs assert claims against Aeroflot and/or Finnair under the Montreal Convention for international airfare delay/cancellation, all five groups premise their claims on different flights throughout 2018 and 2019.  (*See, generally, id.* at ¶¶ 53-166.)  As to the Bandurin Plaintiffs, the Dzugkoeva Plaintiffs, Hanson, and Izenov, all claim that, for different reasons, they were unable to board Aeroflot flights departing from the airport in Moscow, Russian Federation due to alleged improper acts taken by Aeroflot employees in Russia.  (*Id.*)  While waiting for substitute transportation at the Moscow airport, these Plaintiffs claim to have been denied care and attention (and, in the case of Ms. Bandurina, denied access to a wheelchair) allegedly causing further monetary and other harm.  (*Id.*)  Izenov and Hanson also claim that, as a consequence of being unable to board their original flights, their baggage was misdirected/delayed, forcing them to incur additional expense. (*Id.* at ¶¶ 307-322.)  Ms. Berezkina's Montreal Convention claim references only a Finnair flight, and was brought exclusively against Finnair.  (*Id.* at ¶¶ 283-291.)  Specifically, she claims that her connecting Finnair flight from O'Hare International Airport was delayed due to a mechanical issue, causing her to incur damages in the form of prepaid rail transport when she missed her train upon arrival in Moscow.  (*Id.*)  The same facts form the basis of the Plaintiffs' breach of voluntarily assumed contractual duty claim (*id.* at ¶¶ 292-306) and RICO claim (*id.* at ¶¶ 324-341.)

---

[2] Aeroflot disputes the veracity of Plaintiffs' allegations and legal claims, but for purposes of Aeroflot's Rule 12(b)(6) motion to dismiss, all well-pled and non-conclusory factual allegations in the SAC are construed in favor of the Plaintiffs.

## ARGUMENT

I.   **Legal Standards.**

A.   **12(b)(2) Standard.**

Constitutional guarantees of due process place important limitations on the power of state and federal courts to exercise jurisdiction over foreign defendants. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773, 1779 (2017). "It is [the plaintiff's] burden to establish a prima facie case for personal jurisdiction" over the defendant. *Morgan, Lewis & Bockius v. City of E. Chicago*, 401 Ill. App. 3d 947, 951-52 (1st Dist. 2010); *see also Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). To satisfy this burden, plaintiffs must show: (1) their claims against the defendant fall within the scope of Illinois' long-arm statute (735 ILCS 5/2-209); and (2) exercising jurisdiction over the nonresident defendant would not offend the due process protections afforded by both the Illinois and United States Constitutions.[3]

There are two types of personal jurisdiction: general and specific. General jurisdiction focuses on the forum where a defendant lives, or, in the case of a corporation, where it is fairly regarded as at home. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A court with general jurisdiction may hear any claim against that defendant, even if the claim arose in a different state or a different country. *Id.* Specific jurisdiction, in contrast, focuses on the defendant's *suit-related* conduct. *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1779-80. If the suit does not arise out of or relate to the defendant's contacts with the forum (not simply with the plaintiff), the court lacks personal jurisdiction to adjudicate the claim. *Id., Walden v. Fiore*, 571 U.S. 277, 285 (2014). Dismissal is required if personal jurisdiction is not properly pled and established.

---

[3] The Illinois long-arm statute permits Illinois courts to exercise personal jurisdiction to the extent authorized by the United States Constitution. As such, the two inquiries merge and need not be separately addressed. *uBid, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010); *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 732 (7th Cir. 2013).

### B.      12(b)(6) Standard.

A motion to dismiss pursuant to Rule 12(b)(6) challenges the viability of a complaint for failure to state a claim upon which relief may be granted. *Camasta v. Jos. A. Bank Clothiers*, 761 F.3d 732, 736 (7th Cir. 2014). To survive a 12(b)(6) motion, a complaint must plead sufficient factual matter to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading filled with "naked assertion[s]" lacking factual support or that offers only "labels and conclusions" fails to meet this standard and must be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). Generally, a district court's analysis under Rule 12(b)(6) rests on the complaint, "accepting as true all well-pleaded facts alleged and drawing all permissible inferences in [plaintiff's] favor." *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014). However, the court is not bound to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678; *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 465 (7th Cir. 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## II.      Because Aeroflot Is Not Subject To Personal Jurisdiction In Illinois, Plaintiffs' Claims Should Be Dismissed Pursuant To Federal Rule 12(b)(2).

Although the SAC contains more than four full pages of "jurisdictional" allegations, Plaintiffs focus almost exclusively on *subject-matter* jurisdiction. The SAC ignores personal jurisdiction, save for a number of throwaway allegations that Aeroflot is "doing business in" and "soliciting airfare tickets" in Illinois. (Dkt. 7 ¶¶ 28-29.) Under now well-established Supreme Court precedent, such conclusory and threadbare allegations are insufficient to establish that Aeroflot is subject to either general or specific personal jurisdiction in this Court.[4] As such, Hanson, Izenov, and Berezkina's claims against Aeroflot, in addition to those brought by the Dzugkoeva Plaintiffs, should be dismissed.

---

[4] It bears noting that Plaintiffs' vague and threadbare jurisdictional allegations do not make clear whether Plaintiffs ask this Court to exercise general or specific personal jurisdiction over Aeroflot. However, given the fact that several of the Plaintiffs are not even Illinois residents, Plaintiffs must be relying, at least in part, on

**A.      Aeroflot Is Not Subject To General Personal Jurisdiction In Illinois Because It Is Not "Essentially At Home" Here.**

Aeroflot is not subject to general personal jurisdiction in Illinois because Illinois is neither its place of incorporation nor its principal place of business. General jurisdiction is "all purpose," and means that a defendant's corporate operations within the forum state are of such an extensive nature as to render it essentially "at home" there, and therefore subject to suit on causes of action regardless of where they arise. Only by voluntarily entwining itself in such a manner with a particular forum can such a sprawling consent to personal jurisdiction be implied. Typically, therefore, corporations are found to be "at home" only in "the state of the corporation's principal place of business and the state of its incorporation." *Kipp v. Ski Enterprise Corp. of Wisconsin, Inc.*, 783 F.3d 695, 698 (7th Cir. 2015).

In recent years, the United States Supreme Court has repeatedly confirmed the extremely limited applicability of the general jurisdiction doctrine. In *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014), the Supreme Court revisited the type of "continuous and systematic" contacts with a forum state are required to render a corporation "at home," and clarified that a corporation is ***not*** subject to general jurisdiction in every state where it engages even in a substantial, continuous, and systematic course of business. *Id.* at 760-61. The Supreme Court identified only a corporation's principal place of business and state of incorporation as forums where a company is "at home," and emphasized that only in the "exceptional case" will a company be considered "at home" in a forum other than its domicile. *Id.* at 761 n.19. In 2017, the Court reaffirmed *Daimler* and rejected another state court's expansive view of general jurisdiction. *See BNSF Railway Co. v. Tyrrell*, 137 S. Ct. 1549, 1552 (2017).

Under this standard, Aeroflot is neither "at home" nor "essentially at home" in Illinois. The SAC makes *no* effort to detail any contacts between Aeroflot and Illinois, but instead rests on the "doing business" standard soundly rejected in *Daimler*. Indeed, Plaintiffs concede (as they must) that

---

general jurisdiction. But for the reasons set forth below, regardless of the jurisdictional theory, the result is the same for each and every Plaintiff.

Aeroflot is "domiciled at [sic] the Russian Federation." (Dkt. 7 ¶ 29.) Aeroflot is at home in Russia – Illinois is not its principal place of business nor its state of incorporation. And this is not an "exceptional" case, as Plaintiffs have failed to identify any real contacts between Aeroflot and Illinois, much less any that may rise to the level of "at home" that Supreme Court jurisprudence now requires.

**B.    Aeroflot Is Also Not Subject To Specific Personal Jurisdiction Because Hanson, Izenov, Berezkina, And The Dzugkoeva Plaintiffs' Claims Do Not Arise From Or Relate To Any Of Aeroflot's Contacts With Illinois.**

Because Aeroflot is not subject to general jurisdiction in Illinois, Plaintiffs must establish that their claims arise out of or relate to Aeroflot's connections with the Illinois forum in order to survive dismissal. Many of the Plaintiffs cannot satisfy this rigorous standard. Specific jurisdiction, unlike general jurisdiction, is "case-linked." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1773. There must be "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulations." *MG Design Associates v. CoStar Realty Information, Inc.*, 267 F. Supp. 3d 1000, 1015 (N.D. Ill. 2017) (quoting *Goodyear*, 564 U.S. at 919). Specific jurisdiction is not a numbers-driven calculation—the volume of contacts between a defendant and the forum is irrelevant unless the defendant's *suit-related conduct* creates a *substantial* connection with that forum. *Walden*, 571 U.S. at 284; *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. Of Houston Metroplex, P.A.,* 623 F.3d 440, 444 (7th Cir. 2010) (noting that a case must arise out of a defendant's purposefully-directed in-forum activities for specific jurisdiction to exist). Moreover, as the Seventh Circuit recognized, in light of *Walden,* "there can be no doubt that the plaintiff cannot be the only link between the defendant and the forum." *Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014). The only relevant contacts to be evaluated are the defendant's intentional activities directed at the forum itself. Under this standard, four of the five Plaintiff groups cannot satisfy their burden to show that Aeroflot subject to specific jurisdiction in this case.

1.    **Hanson and Izenov.**

Hanson, a Washington resident, purchased airfare from Moscow to Seattle on a Finnair flight operated by Aeroflot through a third party, Expedia. (Dkt. 7 ¶ 79.) He claims that, upon arriving at the Moscow airport on January 5, 2019, he was informed by an Aeroflot representative that he needed to pay an excess baggage fee, and was rerouted to numerous Aeroflot representatives in order to locate the correct person to collect it. (*Id.* ¶¶ 81-93.) Due to the confusion, he says, he did not arrive to the gate until shortly before takeoff, was not allowed to board the plane, and was forced to purchase a new return ticket. (*Id.* ¶¶ 95-101.) He also claims that his baggage was placed on the wrong plane, and was not delivered until several days after arriving home. (*Id.* ¶¶ 101-107.) These allegations form the basis of all of Hanson's claims, whether under the Montreal Convention, an unidentified "contract," or the civil RICO statute.

Izenov is a citizen of Kazakhstan residing in California on a student visa. (*Id.* ¶ 131.) While traveling from Kazakhstan to New York on August 11, 2018, Izenov had a layover in Moscow, but arrived at the gate only 19 minutes prior to departure and allegedly was denied boarding. (*Id.* ¶¶ 132-136.) Izenov allegedly purchased substitute transportation and missed his connecting flight from New York to Chicago. (*Id.* ¶¶ 140-143.) He claims that Aeroflot also misdirected his baggage to Sacramento, not to Los Angeles, and that he was forced to travel to Sacramento in order to retrieve it. (*Id.* ¶¶ 148-149.) Like Hanson, Izenov sued Aeroflot under the Montreal Convention for delay and for his luggage issues, as well as for breach of voluntarily assumed duty and under the federal RICO statute.

Regardless of the legal theory articulated, these Plaintiffs' allegations fall far short of the specific jurisdiction standard articulated in *Walden*, as none of Izenov's or Hanson's claims have *anything* to do with Illinois. The Supreme Court made clear that for a defendant to be subject to specific jurisdiction in a forum, each plaintiff's claims must arise from or relate to the defendant's in-

- 8 -

forum activities. 571 U.S. at 289-90. Actions taken in a foreign jurisdiction, by a foreign defendant, against plaintiffs who are not forum residents, simply does not create a substantial connection with the forum itself. *Id.* at 289.

Izenov and Hanson have not pled any facts to show that Aeroflot is subject to personal jurisdiction with respect to their claims. They are not Illinois residents. They did not suffer injury in Illinois. They did not purchase tickets in Illinois. The Aeroflot flights they originally purchased did not involve transportation to or from Illinois as either the point of origin or final destination. They are not challenging any conduct allegedly taken by Aeroflot in Illinois. It is eminently clear that these claims simply do not arise from any of Aeroflot's forum-related contacts. Plaintiffs' allegations that Aeroflot operates flights out of Illinois and services customers in Illinois is irrelevant to this personal jurisdiction analysis because, even if true, these Plaintiffs' claims have nothing to do with those supposed contacts. Under these facts, exercising personal jurisdiction over Aeroflot with respect to these claims would run directly afoul of the minimum contacts doctrine and the due process protections guaranteed to foreign defendants by the U.S. Constitution, and would essentially subject airlines like Aeroflot, who do business around the world, to personal jurisdiction in every jurisdiction throughout the country. This is not, and has never been, the law.[5] Without *any* connection to Illinois, Izenov and Hanson cannot sue Aeroflot here. Their claims must be dismissed.

> ## 2. Berezkina.

Ms. Berezkina is a Kentucky resident with claims arising out of a Finnair flight from Louisville, KY to Moscow with connecting flights in Chicago, IL and Helsinki, Finland. All of the substantive factual allegations she sets forth relate to Finnair, rather than to Aeroflot—she does not allege that

---

[5] For the reasons set forth in detail in Section III below and set forth in the United States Supreme Court's decision in *Bristol Myers*, Izenov and Hanson must establish that the Court has personal jurisdiction over Aeroflot with respect to each claim they advance, and cannot rely on any of the other Plaintiffs' connections to the Illinois forum to satisfy this burden.

Aeroflot operated the flight she claims was delayed and caused her to miss her rail transportation upon arrival in Moscow. (Dkt. 7 ¶¶ 154-166.) Likely for this very reason, her Montreal Convention claim (Count Five) is brought exclusively against Finnair, not Aeroflot. (*Id.* ¶¶ 283-291.) However, the breach of voluntarily assumed duty claim (Count Six) and RICO claim (Count Nine) are not so limited, and appear to be asserted against Aeroflot. Given that the flight that forms the basis of her claims was not an Aeroflot flight, it is difficult to see how she could establish claims against Aeroflot for breach of any assumed "contractual" duty or RICO, much less how any of those claims could possibly arise out of any suit-related conduct by Aeroflot, as opposed to Finnair. For these reasons, to the extent Ms. Berezkina is, in fact, asserting Count Six and Count Nine against Aeroflot, they must be dismissed for lack of personal jurisdiction.

### 3. The Dzugkoeva Plaintiffs.

Applying the same standard, this Court lacks specific jurisdiction over Aeroflot to adjudicate the Dzugkoeva Plaintiffs' claims. Dzugkoeva and Tolparova, on their own behalf and on behalf of minor child, Lana Zangieva, claim that they purchased international airfare—although they do not specify from whom they purchased their tickets or how the purchase was executed—from their home in Illinois. But just as with Hanson and Izenov, all of the pertinent events that form the basis of their claims occurred in Russia. They allege that they were scheduled to depart Moscow on February 26, 2018, but had to spend 40 minutes waiting to check in their luggage upon arrival. (*Id.* ¶¶ 114, 117-118.) Because of the baggage delay, they allegedly missed their departing flight to New York, had to purchase substitute airfare, and were otherwise subjected to Aeroflot personnel's "reckless indifference" to their travel needs. (*Id.* ¶¶ 120-123, 263-278.)

Case law from the Supreme Court has strongly emphasized and cautioned that "mere injury to a forum resident is not a sufficient connection to the forum" to justify subjecting a nonresident to specific jurisdiction. *Walden*, 571 U.S. at 289-90. Actions taken in a foreign jurisdiction, even if

directed toward a person with known connections to the forum, simply does not create the type of substantial connection with the forum contemplated by *Walden* and necessary to satisfy due process. But this is all the Dzugkoeva Plaintiffs have alleged here—that they, as Illinois residents, purchased international airline tickets (from an unknown source), and that Aeroflot "does business" in Illinois by operating flights out of the state. This is insufficient. Unlike the Bandurins, who allegedly purchased transportation from Aeroflot to and from Illinois, the Aeroflot transportation the Dzugkoeva Plaintiffs purchased did not touch Illinois at all. Indeed, their flight itineraries show that they procured their tickets from CheapOair.com, a third-party website, not from Aeroflot. (*See* Declaration of Oliver Beiersdorf, attached as Exhibit A, at Exs. 1 and 2.) And the only Aeroflot flights the Dzugkoeva Plaintiffs purchased from CheapOair.com provided for air transport from JFK airport in New York to Moscow, and back to New York. (*Id.*) The flights from Chicago to New York were operated by JetBlue – not Aeroflot. (*Id.*) Significantly, Plaintiffs do not allege any connection or affiliation between JetBlue and Aeroflot that would support the exercise of personal jurisdiction. In sum, the transportation the Dzugkoeva Plaintiffs actually purchased *from Aeroflot* had no connection to Illinois whatsoever. Because the Dzugkoeva Plaintiffs' claims do not arise out of any contacts between Aeroflot and the Illinois forum, their claims should be dismissed for lack of personal jurisdiction.

## III. In The Alternative, Plaintiffs' Class Definitions Should Be Stricken Because They Include Putative Class Members With Similarly Jurisdictionally Deficient Claims.

For the reasons articulated above, Aeroflot is not subject to personal jurisdiction in Illinois with respect to many of the Plaintiffs' claims, necessitating dismissal. But the jurisdictional problems in the SAC are more extensive given Plaintiffs' class allegations. Plaintiffs purport to represent numerous nationwide classes of individuals including, at its broadest, all persons *nationwide* who had confirmed reservations on *any* Aeroflot flight since 2008, but were not allowed to board the flight and had to purchase substitute airfare. (Dkt. 7 ¶¶ 176-177.) Recent Supreme Court precedent and cases

from other courts within this District have shed light on the jurisdictional problems inherent in these types of nationwide class allegations.

The Supreme Court's June 2017 opinion in *Bristol-Myers* transformed the landscape of personal jurisdiction jurisprudence and provided new guidance for evaluating personal jurisdiction in multi-party actions involving nonresident plaintiffs and defendants. *Bristol-Myers* was the first clear pronouncement that people whose claims lack a connection to the particular forum cannot simply piggy-back on plaintiffs who are able to adequately establish personal jurisdiction over the defendant and join their claims, no matter how similar, in the same action. Put another way, each plaintiff must establish personal jurisdiction over the defendant for each claim he or she asserts. 137 S. Ct. at 1781.

*Bristol-Myers* involved a mass tort action in California brought by 86 resident and 592 nonresident plaintiffs against Bristol-Myers, a nonresident pharmaceutical manufacturer for injuries sustained from each plaintiff's use of Plavix. *Id.* at 1778. The nonresident plaintiffs did not, and could not, allege that they purchased Plavix in California, that they ingested Plavix in California, or that they suffered injury in California. *Id.* at 1781. In short, but for their joinder with the claims advanced by California residents, the nonresidents' claims lacked any direct connection with California. The Supreme Court held that, in these circumstances, the state court lacked personal jurisdiction over Bristol-Myers with respect to these nonresidents' claims. In particular, the Court emphasized that even in situations where the forum state has a strong interest in adjudicating the controversy and even if the forum is a convenient one, "the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." *Id.* at 1781.

Following *Bristol-Myers*, many courts, including those within this District, have applied the same jurisdictional reasoning to nationwide class actions and dismissed or stricken claims/class definitions where the Court would lack personal jurisdiction over the defendant to adjudicate putative class members' claims. This is so because, like permissive joinder, a class action is merely a procedural

device and does not alter the parties' substantive rights. 28 U.S.C. § 2072(b); *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 592 (1997). As the court in *America's Health & Resource Center, Ltd. v. Promologics, Inc.* observed, "due process requirements do not differ between class and non-class actions" and due process *always* requires the same "connection between the forum and the specific claims at issue." Case No. 6 C 9281, 2018 WL 3474444, at *2 (N.D. Ill. July 19, 2018). Recognizing these fundamental principles, courts in this District have *repeatedly* concluded that under *Bristol-Myers*, a nationwide class action is inappropriate where the defendant would not be subject to personal jurisdiction vis a vis the claims of each putative class member. *See id.* at *3-4; *Practice Mgmt Support Servs., Inc. v. Cirque du Soleil, Inc.*, No. 14 CV 02032, 2018 WL 1255021, at *15-17 (N.D. Ill. Mar. 12, 2018); *Anderson v. Logitech, Inc.*, No. 17 C 6104, 2018 WL 1184729, at *1 (N.D. Ill. Mar. 7, 2018); *Debernardis v. NBTY, Inc.*, No. 17 C 6125, 2018 WL 461228, at *1-2 (N.D. Ill. Jan. 18, 2018); *McDonnell v. Nature's Way Prods., LLC*, No. 16 C 5011, 2017 WL 4864910, at *4 (N.D. Ill. Oct. 26, 2017).

Even if some of the Plaintiffs' claims are jurisdictionally sufficient, this analysis does not change. These recent developments in personal jurisdiction jurisprudence make clear that even if a named plaintiff can establish personal jurisdiction over the defendant for their own claims, he or she cannot represent a class of individuals where jurisdiction over their claims would be lacking. Plaintiffs' class definitions here are plainly overbroad. They seek to represent a series of nationwide classes without regard for whether the individuals' claims have *any* relation to any contacts Aeroflot had with Illinois, much less whether they meet the stricter "arising from or related to" standard articulated in *Walden* and *Bristol-Myers*. (Dkt. 7 ¶¶ 171-177.) These are precisely the same deficiencies that were fatal to the *Debernardis, Anderson, McDonnell*, and *Practice Management* classes. Plaintiffs' classes, as defined in the SAC, should suffer the same fate. Accordingly, in the event Plaintiffs' claims are not dismissed in

their entirety, Plaintiffs' class definitions must be stricken and limited to comport with *Bristol-Myers* and its progeny.[6]

## IV.   Plaintiffs' Montreal Convention Claims Should Be Dismissed Pursuant to Rule 12(b)(6).

Plaintiffs do not state viable claims under the Montreal Convention.[7]  Both the Russian Federation and the United States are signatories to the Montreal Convention.  *See* Exhibit 1 (list of Montreal Convention member states).[8]

The Warsaw Convention[9], which preceded the Montreal Convention, arose to foster the growth of the commercial airline industry, creating a comprehensive liability system to serve as the exclusive mechanism for remedying injuries suffered in the course of "international transportation of persons, baggage, or goods performed by aircraft."  Warsaw Conv., Art. 1; *see also El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 169–70 (1999); *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 546 (1991).  "The cardinal purpose of the Warsaw Convention ... is to achieve uniformity of rules governing claims arising from international air transportation."  *Tseng*, 525 U.S. at 169; *see also Shah v. Pan Am. World Servs., Inc.*, 148 F.3d 84, 98 (2d Cir. 1998) (describing the problems facing air carriers when they are subjected to a multiplicity of municipal laws and are unable to predict in advance what law will govern in the event of an accident).  The Warsaw Convention thus created a comprehensive liability system

---

[6] Rule 23(d)(1)(D) permits courts to issue orders that "require that the pleadings be amended to eliminate allegations about representation of absent persons" so that the action can proceed accordingly.  Fed. R. Civ. P. 23(d)(1)(D); *see also* Fed. R. Civ. P. 23(d)(1) (allowing court to issue orders to "deal with similar procedural matters.")   Read together, these sections permit federal courts to modify or strike class allegations without waiting for a certification motion.  *See Santangelo v. Comcast Corp.*, No. 15-CV-0293, 2017 WL 6039903, at *3 (N.D. Ill. Dec. 6, 2017); *Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407, 414 (N.D. Ill. 2012).

[7] Convention for Int'l Carriage by Air, S. Treaty Doc. No. 106-45 (May 28, 1999) ("Montreal Convention").

[8] On a motion to dismiss, a court may take judicial notice of matters of public record.  *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[9] Convention for the Unification of Certain Rules Relating to International Transportation by Air (Oct. 12, 1929), 49 Stat. 2000, T.S. 876 (eff. Oct. 29, 1934) ("Warsaw Conv.").

to serve as the exclusive mechanism for remedying injuries suffered in the course of the "international transportation of persons, baggage, or goods performed by aircraft." Warsaw Convention, Art. 1; *see also Tseng*, 525 U.S. at 169–70.

The Montreal Convention, the most recent iteration of the Warsaw Convention, became effective on November 4, 2003. *See* S. Treaty Doc. No. 106–45, 1999 WL 33292734.[10] Like the Warsaw Convention, the Montreal Convention "precludes passengers from bringing actions under local law when they cannot establish air carrier liability under the treaty." *Tseng*, 525 U.S. at 175.

### A.     Plaintiffs Do Not State Claims Under Article 19 of the Montreal Convention in Counts One – Five.

Article 19 of the Montreal Convention provides the following:

> The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures.

Claims alleging nonperformance of an airline ticket contract are regarded as a claim for breach of contract where claims alleging delay are governed by the Montreal Convention. *Wolgel v. Mexicana Airlines*, 821 F.2d 442, 444 (7th Cir. 1987) ("The history of the Warsaw Convention indicates that the drafters of the Convention did not intend the word "delay" in Article 19 to extend to claims, such as the Wolgels', that arise from the total nonperformance of a contract.") (finding that Warsaw Convention is inapplicable to claims of nonperformance of a contract); *Shabotinsky v. Deutsche Lufthansa AG*, 245 F. Supp. 3d 1018, 1022 (N.D. Ill. 2017) ("Claims alleging nonperformance are regarded as

---

[10] Although the Montreal Convention "unifie[d] and replace[d] the system of liability that derives" from its predecessor, the Warsaw Convention, the Montreal Convention still retains many of the original provisions and terms and thus courts have continued to rely on cases interpreting equivalent provisions in the Warsaw Convention so that "the Court need not decide which Convention controls." *See Paradis v. Ghana Airways Ltd.*, 348 F. Supp. 2d 106, 111 (S.D.N.Y. 2004), *aff'd*, 194 F. App'x 5 (2d Cir. 2006); *see, e.g., Narayanan v. British Airways*, 747 F.3d 1125, 1127 n.2 (9th Cir. 2014) ("Although designed to replace the Warsaw Convention, the Montreal Convention incorporates many of its substantive provisions. Accordingly, in interpreting the Montreal Convention, courts have routinely relied upon Warsaw Convention precedent where the equivalent provision in the Montreal Convention is substantively the same.") (citations omitted).

claims for breach of contract; claims alleging delay are governed by the Convention."). In *Wolgel*, the Wolgels had "confirmed reservations [from Chicago to Mexico], and had complied with the relevant pre-boarding conditions. However, when the Wolgels presented their tickets and baggage to Mexicana's passenger agent, they were informed that no seats were available on their flight. In short, the Wolgels had been 'bumped.'" 821 F.2d at 443. The Seven Circuit held that "[t]he history of the Warsaw Convention indicates that the drafters of the Convention did not intend the word 'delay' in Article 19 to extend to claims, such as the Wolgels', that arise from the total nonperformance of a contract." *Id.* at 444; *see Shifrin v. Compagnie Nationale Air France*, No. 99 C 5427, 2001 WL 204801, at *2 (N.D. Ill. Mar. 1, 2001) ("Like the plaintiffs in Wolgel, Plaintiffs here claim that Defendant failed to honor its contract with the Plaintiffs by not providing them with air transportation to Chicago.").[11]

### 1. Because Plaintiffs' Article 19 Claims Are Not Premised on Delay (Or Are Not Asserted Against Aeroflot At All), Counts One Through Five Should Be Dismissed.

None of the Plaintiffs have stated an adequate Article 19 claim, as they all allege total nonperformance, rather than delay, exactly the theory rejected in *Wolgels*. The Bandurin Plaintiffs claim that they were denied boarding, *not a delay*. (Dkt. 7 ¶ 200) ("[Bandurin Plaintiffs] were not allowed to board said departing flight by Aeroflot and which were ordered by Aeroflot to procure new airfare at additional expense[.]"). Izenov alleges the same thing. (*Id.* ¶ 136 (That the crew "shut the door in front of him[.]"); *Id.* ¶ 221 ("[Plaintiff Izenov] was not allowed to board said departing flight by Aeroflot[.]")). So does Hanson. (*Id.* ¶ 95 ("That the above–named Plaintiff finally arrived at the airline departure gate at approximately 15 minutes before takeoff and was informed that the above–named Plaintiff had missed the flight, and that the above–named Plaintiff should return to the Aeroflot ticketing desk."); *Id.* ¶ 242 ([Plaintiff Hanson] was "not allowed to board said departing flight by

---

[11] As noted above, in interpreting the Montreal Convention, courts have routinely relied upon Warsaw Convention precedent.

Aeroflot[.]")).    The Dzugkoeva Plaintiffs claim they missed their flights. (*Id.* ¶ 120 ("Plaintiffs missed their departing flight to New York."); *Id.* ¶ 121 ("[Aeroflot] refused to honor their existing airfare tickets."); *Id.* ¶ 263 ([Plaintiffs Madina Dzugkoeva, Albina Tolparova and Lana Zangieva] were not allowed to board said departing flight by Aeroflot[.]")).    As established in *Wolgel*, claims for total nonperformance of a contract do not fall within the scope of Article 19, and are not actionable under the Montreal Convention.    Accordingly, the Bandurin Plaintiffs, Hanson, Izenov, and the Dzugkoeva Plaintiffs failed to state a viable claim under Article 19, and their claims should be dismissed.

Plaintiff Berezkina does not state an Article 19 claim against Aeroflot in Count Five because Plaintiff Berezkina does not allege that she contracted to take an Aeroflot flight.  *Id.* ¶ 154 ("[Plaintiff Berezkina] purchased international airfare transportation to be performed by FINNAIR…").  Accordingly, there are no allegations directed at Aeroflot in Count Five and Count Five should not be construed as asserting a claim against Aeroflot.    To the extent it can be so construed, it should be dismissed for failure to include any allegations linking Aeroflot to her claim.

        **2.**       **Even if Plaintiffs Stated Article 19 claims in Counts One – Five (they did not), Plaintiffs Cannot Recover for Non-economic Damages Under Article 19 and Economic Damages Under Article 19 are Limited to 4150 Special Drawing Rights Per Passenger.**

Even if Plaintiffs stated Article 19 claims in Counts One – Five (they have not), Plaintiffs cannot recover for non-economic damages under Article 19.  In Counts One – Five, the Plaintiffs seek recovery for non-economic damages of "indifferent treatment, inconvenience, physical discomfort, physical exhaustion… and other…losses and injuries." (*See, e.g.*, Dkt. 7 ¶ 213; *see also id.* ¶¶ 234, 255, 278, 288 (describing various non-economic damages in Counts Two – Five).  Non-economic damages such as inconvenience and emotional harm are not compensable under Article 19.  *Vumbaca v. Terminal One Grp. Ass'n L.P.*, 859 F. Supp. 2d 343, 368 (E.D.N.Y. 2012) ("Mere inconvenience does not support a claim under Article 19.  Since plaintiff's only timely claims are for non-economic harms, she cannot recover under Article 19."); *Eke v. Deutsche Lufthansa*, No. CV 13-

11099-GAO, 2013 WL 12201891, at *11 (D. Mass. Oct. 2, 2013) ("Mental injury damages, damages for inconvenience and mental anguish, are not recoverable under Article 19."); *Lee v. Am. Airlines Inc.*, 355 F.3d 386, 387 (5th Cir. 2004) ("Mental injury damages are not recoverable under the Warsaw Convention."); *Bassam v. Am. Airlines*, 287 F. App'x 309, 317–18 (5th Cir. 2008) (same).

In addition, pursuant to Article 22(1), any damage alleged in an Article 19 claim is specifically limited to provable damages up to 4150 Special Drawing Rights. Article 22(1) ("In the case of damage caused by delay as specified in Article 19 in the carriage of persons, the liability of the carrier for each passenger is limited to provable damages up to 4150 Special Drawing Rights.

**B.      Plaintiffs Do Not State Claims Under Article 17 in Counts Seven, Eight and Ten.**

In pertinent part, Article 17 of the Montreal Convention provides the following:

> 1.   The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

> 2.   The carrier is liable for damage sustained in case of destruction or loss of, or of damage to, checked baggage upon condition only that the event which caused the destruction, loss or damage took place on board the aircraft or during any period within which the checked baggage was in the charge of the carrier. However, the carrier is not liable if and to the extent that the damage resulted from the inherent defect, quality or vice of the baggage. In the case of unchecked baggage, including personal items, the carrier is liable if the damage resulted from its fault or that of its servants or agents.

**1.      Plaintiffs Hanson and Izenov Do Not State Claims for Destruction of Baggage Under Article 17 in Counts Seven and Eight and Article 22 Does Not Provide a Right of Action.**

Plaintiffs Hanson and Izenov do not state claims for destruction of baggage under Article 17 in Counts Seven and Eight because they do not allege their baggage was destroyed, and with respect to Izenov, because he does not allege that he made a timely complaint of damaged luggage as required under Article 31, which is necessary to sustain an Article 17 claim for damaged luggage. As to Article

22, Plaintiffs Hanson and Izenov do not state claims under Article 22 because Article 22 does not provide a right of action. Rather Article 22 of the Montreal Convention provides limits on liability.

As noted above, in subsection 1, Article 17 provides for liability against an air carrier "in case of death or bodily injury of a passenger[]." In subsection 2, Article 17 provides for liability against an air carrier "in case of destruction or loss of, or of damage to, checked baggage upon condition only that the event which caused the destruction, loss or damage took place on board the aircraft or during any period within which the checked baggage was in the charge of the carrier." Article 17(2).[12] In Count Seven, Hanson does not allege his baggage was destroyed, rather, he alleges that his baggage was delayed in reaching him after several days causing him to have to buy substitute items of clothing, etc. (Dkt. 7 ¶¶ 310-11). Accordingly, Plaintiff Hanson cannot maintain a claim under Article 17.

In Count Eight, Izenov alleges that there was a delay in receiving his baggage. (*Id.* ¶ 319.) Although Izenov alleges that his luggage was damaged, he provides no facts on how his luggage was damaged. (*Id.* ("[Luggage] was delivered to him in damaged conditions.")). This allegation of his luggage being damaged is far too conclusory and must be disregarded pursuant to *Iqbal/Twombly*. *See Worix v. MedAssets, Inc.*, 857 F. Supp. 2d 699, 706 (N.D. Ill. 2012) (finding that allegation of suffering "actual damages including lost money and property" to be conclusory because "there is no indication anywhere in the complaint of what 'money or property' he might have lost[.]"); *Orrington v. Scion Dental, Inc.*, No. 17-CV-00884, 2017 WL 5569741, at *8 (N.D. Ill. Nov. 20, 2017) ("As an initial matter, Plaintiff's conclusory allegation that it "suffered damages" is insufficient…"). Moreover, Izenov does not allege that he made a timely complaint regarding his allegedly damaged luggage pursuant to Article 31 which is necessary to sustain an Article 17 claim for damaged luggage. Article 31 provides:

Article 31 – Timely Notice of Complaints

1.      Receipt by the person entitled to delivery of checked baggage or cargo without complaint is prima facie evidence that the same has been delivered in good condition

---

[12] Article 17 has two other subsections, subsection (3) and (4), but neither are applicable here.

and in accordance with the document of carriage or with the record preserved by the other means referred to in paragraph 2 of Article 3 and paragraph 2 of Article 4.

2.  In the case of damage, the person entitled to delivery must complain to the carrier forthwith after the discovery of the damage, and, at the latest, within seven days from the date of receipt in the case of checked baggage and fourteen days from the date of receipt in the case of cargo. In the case of delay, the complaint must be made at the latest within twenty-one days from the date on which the baggage or cargo have been placed at his or her disposal.

3.  Every complaint must be made in writing and given or dispatched within the times aforesaid.

4.  If no complaint is made within the times aforesaid, no action shall lie against the carrier, save in the case of fraud on its part.

Izenov does not allege that he made a written complaint within "seven days from the date of receipt" of his luggage. Accordingly, he cannot maintain a claim under Article 17. *See* Article 31(4); *Pumputyte v. United Airlines, Inc.*, No. 16 C 4868, 2018 WL 1240314, at *5 (N.D. Ill. Mar. 9, 2018) ("Accordingly, because *Pumputyte* identifies no record evidence showing that she made a complaint in writing about either the delay in delivering her luggage or the damage to the luggage, Article 31(3) precludes recovery for both.").

Furthermore, neither Hanson nor Izenov state a claim under Article 22 because Article 22 does not provide a right of action, rather, it provides limits on provable damages. In pertinent part, Article 22(2) addresses the limitation on liability (assuming damages are proven at all) for an air carrier regarding the destruction, loss, damage or delay of baggage:

In the carriage of baggage, the liability of the carrier in the case of destruction, loss, damage or delay is limited to 1 000 Special Drawing Rights for each passenger unless the passenger has made, at the time when the checked baggage was handed over to the carrier, a special declaration of interest in delivery at destination and has paid a supplementary sum if the case so requires. In that case the carrier will be liable to pay a sum not exceeding the declared sum, unless it proves that the sum is greater than that passenger's actual interest in delivery at destination.

Article 22(2) does not provide a separate liability mechanism for an air carrier. Accordingly, Hanson and Izenov cannot state claims under Article 22(2).

- 20 -

2. **Plaintiff Bandurina Does Not State a Claim for Personal Injury Under Article 17 of the Montreal Convention in Count Ten and No Claims Can be Alleged Under Article 21 and EU Regulation 889/2002.**

Plaintiff Bandurina alleges a claim under Articles 17 and 21, as well as under EU Regulation 889/2002 in Count Ten of the SAC. Plaintiff fails to state a claim under Article 17 of the Montreal Convention, and Plaintiff cannot state claims under Article 21 of the Montreal Convention and EU Regulation 889/2002 because those statutes do not provide for rights of action.

Article 21 of the Montreal Convention does not provide a passenger with a right of action, rather, it provides a limitation of provable damages.

1. For damages arising under paragraph 1 of Article 17 not exceeding 100 000 Special Drawing Rights for each passenger, the carrier shall not be able to exclude or limit its liability.

2. The carrier shall not be liable for damages arising under paragraph 1 of Article 17 to the extent that they exceed for each passenger 100 000 Special Drawing Rights if the carrier proves that:

   (a) such damage was not due to the negligence or other wrongful act or omission of the carrier or its servants or agents; or

   (b) such damage was solely due to the negligence or other wrongful act or omission of a third party.

Montreal Convention, Article 21; *Ginsberg v. Am. Airlines*, No. 09 CIV 3226 LTS KNF, 2010 WL 3958843, at *3 (S.D.N.Y. Sept. 27, 2010) (Articles 21, 22 and 23 of the Montreal Convention set liability limits for each type of covered claim[.]"). Accordingly, Plaintiff Bandurina cannot maintain a claim based on Article 21.

Likewise, Plaintiff Bandurina cannot maintain a claim under European Union Regulation 889/2002. E.U. Regulation 889/2002 does not provide a separate right of action for a party, rather, the European Union incorporated the provisions of the Montreal Convention through E.U. Regulation 889/2002. *See* Preamble Articles 5 and 6 of Regulation (EC) No 889/2002 of the European Parliament and of the Council of 13 May 2002 amending Council Regulation (EC)

No. 2027/97 on air carrier liability in the event of accidents ("(5) The Community has signed the Montreal Convention indicating its intention to become a party to the agreement by ratifying it. (6) It is necessary to amend Council Regulation (EC) No 2027/97 of 9 October 1997 on air carrier liability in the event of accidents."))[13]; *see Walz v Clickair SA*, 62009CC0063, EU Court of Justice ("The provisions of the Montreal Convention relating to the liability of air carriers were incorporated into Council Regulation (EC) No 2027/97 of 9 October 1997 on air carrier liability in the event of accidents (5) ('Regulation No 2027/97'), (6) which was amended by Regulation (EC) No 889/2002 of the European Parliament and of the Council of 13 May 2002."). Nor would E.U. law apply in an event.

Moreover, Plaintiff Bandurina fails to state a claim under Article 17 of the Montreal Convention for personal injury. To state a valid claim for personal injury under Article 17, a plaintiff must plead three essential elements:

1) there has been an "accident", in which

2) the passenger suffered death, wounding or other bodily injury, ("mort," "blessure," "ou ... toute autre lésion corporelle," in the original French) and;

3) the accident took place on board the aircraft or in the course of operations of embarking or disembarking.

*See* Montreal Convention, Art. 17 (providing for carrier liability "for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking."). Plaintiff Bandurina does not allege that she suffered a physical injury or that the accident took place on board the aircraft or in the course of operations of embarking or disembarking.

---

[13] EU Regulation 889/2002 is available at https://eur-lex.europa.eu/legal-content/EN/TXT/?uri=CELEX%3A32002R0889.

### a. Plaintiff Bandurina does not allege a physical injury.

A plaintiff under Article 17 of the Montreal Convention bears the burden to establish that she suffered death, wounding or other "bodily injury." *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 546 (1991). The U.S. Supreme Court in *Floyd* considered whether under Article 17 a passenger could recover for purely mental or psychic injury, in the absence of physical injury: "We conclude that an air carrier cannot be held liable under Article 17 when an accident has not caused a passenger to suffer death, physical injury, or physical manifestation of injury" and declined to decide "whether passengers can recover for mental injuries that are accompanied by physical injuries." *Id.* at 552.[14] The Supreme Court concluded that "Article 17 does not allow recovery for purely mental injuries." *Id.* at 534.

In *Longo v. Air France*, No. 95CV0292 BDP, 1996 WL 866124, at *2 (S.D.N.Y July 25, 1996), a district court, following *Floyd,* refused to allow plaintiffs to recover for their fear of death after their plane, unable to stop upon landing, skidded into the ocean, when the physical injuries they suffered included only minor bruising suffered during the landing and emergency evacuation into the water. In *Marks v. Virgin Atlantic Airways Ltd.*, No. 04 Civ. 0251(SAS) 2004 WL 1574637, at *1 (S.D.N.Y. July 14, 2004), the plaintiff, who was 4 ½ months pregnant, tripped and fell in the aircraft, and claimed that she injured her leg, arm, hip, back, and "tummy," and also sought damages for psychological injuries allegedly suffered due to her concern about the health of her unborn child. Marks and her unborn child were examined both in the United Kingdom and the United States, and Marks was informed that the child was healthy and uninjured. *Id.* at *1-2. Partial summary judgment was granted to the airline on the basis of no bodily injury. *Id.*[15]

---

[14] In *Floyd*, three of four engines failed shortly after takeoff. 499 U.S. at 533. The crew told the passengers that the plane would soon crash land in the Atlantic Ocean. The pilots managed to land the airplane, and there was no crash, but a number of passengers sued for emotional distress. *Id.*

[15] In *Marks*, the plaintiffs sought "compensation for the psychological injuries that Ilanit Marks allegedly suffered as a result of (1) her own physical injuries and (2) the uncertainty of the health of her unborn child." The partial motion for summary judgment was only directed to the latter. *Marks*, 2004 WL 1574637, at *1.

The U.S. Supreme Court has reiterated that even persistent physiological manifestations of mental injuries do not constitute "bodily injury." *See El Al Israel Airlines, Ltd. v. Tseng,* 525 U.S. 155, 166 n. 9 (1999), *reversing* 122 F.3d 99 (2d Cir. 1997), *reversing in part,* 919 F. Supp. 155 (S.D.N.Y. 1996). In *Tseng,* the defendant airline, as a pre-boarding security measure, subjected the plaintiff to an extensive physical search, which caused her to be "[t]raumatized and humiliated, [and plaintiff] left feeling raped" and then, during the flight, she felt "really sick, very upset" and nervous, and had a headache. 525 U.S. at 164. Later, the plaintiff sought medical and psychiatric treatment for "emotional[] trauma" and for symptoms including "headaches, upset stomach, ringing in her ears, nervousness and sleeplessness." *Tseng,* 122 F.3d at 101; 919 F. Supp. at 157. The District Court held that Tseng had not suffered requisite injury under *Floyd*:

> Her body was not injured by the woman who searched her... On the contrary, all of her personal injuries are attributable to her shock and outrage at the way she was treated. Although her injuries may have had physical manifestations, those are the types of psychic or psychosomatic injuries barred by *Floyd*...

*Tseng,* 919 F. Supp. at 158.[16] *See Carey v. United Airlines,* 255 F.3d 1044, 1052 (9th Cir. 2001) ("[W]e hold that physical manifestations of emotional and mental distress do not satisfy the "bodily injury" requirement in Article 17."); *Hansen v. Delta Airlines,* No. 02 C 7651, 2004 WL 524686, at *3 (N.D. Ill. Mar. 17, 2004) ("Purely mental injuries, unaccompanied by physical injuries, are not compensable under the Convention.").

Plaintiff Bandurina alleges that she was refused a wheelchair and as a result was "subjected to a long walk" through a terminal "causing her to experience severe pain and suffering and further causing her to sustain a personal injury…" (Dkt. 7 ¶ 345). The next three paragraphs repeat the

---

[16] Although "[t]he question of whether the symptoms expressed by the plaintiff amounted to the required 'bodily injury' was not at issue before the Second Circuit and was not before the Supreme Court," (*Carey v. United Airlines, Inc.* 77 F. Supp. 2d 1165, 1172-73 (D. Or. 1999)) the Court throughout its analysis declared, "Tseng alleges psychic or psychosomatic injuries, but no 'bodily injury.'" *Tseng,* 525 U.S. at 160; *see also id.* at 164, 171-72 (Tseng "sustained" only "psychic or psychosomatic injuries").

conclusory allegation that she suffered a "personal injury." (*Id.* ¶¶ 346-48.) Plaintiff Bandurina, however, does not provide any factual allegations to support her claim that she suffered a physical injury. (*Id.* ¶ 345.)[17] Pain and suffering are not physical injuries sufficient to state a claim under Article 17. *Tseng*, 525 U.S. at 160. Plaintiff Bandurina's Article 17 claim must be dismissed because she failed to allege a "bodily injury" as required under *Floyd* and Article 17 of the Montreal Convention.

> **b. Plaintiff Bandurina does not allege the accident took place on board the aircraft or in the course of operations of embarking or disembarking.**

Plaintiff Bandurina does not allege any accident took place on board the aircraft or in the course of operations of embarking or disembarking. Rather, Plaintiff Bandurina alleges her pain and suffering from having to walk took place in the terminal in the airport. (Dkt. 7 ¶ 345) ("[Plaintiff Bandurina] subjected to long walk through one terminal of Sheremetyevo International Airport to another causing her to experience severe pain and suffering[.]"). To sustain a claim under Article 17, the accident alleged must be on board a plane or while a plaintiff is embarking or disembarking a plane. *Zubko v. Aeromexico*, No. 17-CV-04391, 2018 WL 3732688, at *2 (N.D. Ill. Aug. 6, 2018) (dismissing Article 17 claim where"[i]n their complaint, Zubko and Deka do not allege that any accident took place on board a plane or while they were embarking or disembarking a plane."); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 618 (7th Cir. 1989) (because "[t]he delegates of the Warsaw Convention expressly rejected a proposal which would have made an airline liable for all injuries a passenger sustained from the time he first entered the airport of departure until the moment he left the airport of arrival" dismissal of Article 17 claim was warranted as any injury allegedly suffered "was not sustained on the plane or in the course of embarking or disembarking[.]")). Plaintiff Bandurina alleges in conclusory fashion that she was "embarking" when she underwent pain and suffering, Second Am. Compl. ¶¶ 345-46, but these conclusory allegations must be disregarded, particularly

---

[17] It is unclear if a "personal injury" is even alleged to be a physical injury.

when contradicted by more specific allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Indeed, she explicitly alleges that her pain and suffering took place while walking through the terminal (Dkt. 7 ¶ 345), making her conclusory allegation that the "accident" took place while embarking even more nonsensical. Accordingly, Plaintiff Bandurina's Article 17 claim should be dismissed.

## V. This Court Should Dismiss Plaintiffs' Breach of Contract Claim (Count Six) For Failure to State A Claim.

In Count Six, Plaintiffs allege breach of contract claims premised on the same allegations that form the basis of their Article 19 claims. (Dkt. 7 ¶ 297) ("That at all times material hereto the above-named defendant was under self-imposed voluntary assumed contractual duty to compensate passengers for damages caused by delay of international airfare per Art. 19 of the Montreal Convention."). Plaintiffs seek $6,487.50 per passenger in damages as well as special, incidental, and consequential damages and attorneys' fees. (*Id.* ¶ 306.)

But, problematically, Plaintiffs never identify which contractual provision they claim was breached. In order to state a claim for breach of contract, a plaintiff must identify the contractual provision at issue. *Nat'l Tech., Inc. v. Repcentric Sols., No. 13 C 1819*, 2013 WL 6671796, at *2 (N.D. Ill. Dec. 18, 2013) ("Without identifying a provision of the Agreement that was actually breached, NTI cannot allege a claim for breach of contract."); *Bortz v. Bank of Am., N.A.*, No. 16-CV-5338, 2016 WL 7104288, at *4 (N.D. Ill. Dec. 6, 2016) ("Without alleging a contract provision that was breached, th[is] claim is merely possible, not plausible.") (citing *Burke v. 401 N. Wabash Venture, LLC*, No. 08 CV 5330, 2010 WL 2330334, at *2 (N.D. Ill. June 9, 2010)); *Houston v. Fifth Third Bank*, No. 18-CV-5981, 2019 WL 1200574, at *5 (N.D. Ill. Mar. 14, 2019) ("Problematically, Plaintiff neither attaches the parties' account agreement nor pleads the provision of the agreement he claims Defendant breached.").

Without identifying a contractual provision that was breached, Plaintiffs have not "nudged" their claims of breach of contract "across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556

U.S. 662, 680 (2009). It is all the more important that Plaintiffs identify the contractual provision that they claim was breached because Plaintiffs fail to attach their Contracts of Carriage to the SAC. Plaintiffs cannot simply restate their Article 19 claims as breach of contract claims to avoid dismissal.[18]

In addition, Plaintiffs cannot seek attorneys' fees in a breach of contract claim without identifying a contractual provision permitting recovery of attorneys' fees and Plaintiffs do not identify any such provision. *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 839 (7th Cir. 2010) ("Illinois generally recognizes the American Rule that, 'absent a statute or contractual provision, a successful litigant must bear the burden of his or her own attorney's fees.'"). Accordingly, Plaintiffs' demand for attorney's fees in Count Six must be dismissed.

## VI. The Court Should Dismiss Plaintiffs' Civil RICO Claim (Count Nine) For Failure To State A Claim.

In Count Nine of the SAC, Plaintiffs summarily allege that Aeroflot violated the civil RICO statute by refusing to accept previously purchased air travel tickets and causing Plaintiffs to procure substitute airfare for Aeroflot flights departing from Moscow, Russian Federation to the United States. But Plaintiffs merely recite the elements of a RICO claim, and fail to plead any facts that could support such a claim, necessitating dismissal.

To state a viable RICO claim, a plaintiff must plead the elements of at least one of the "prohibited activities" under 18 U.S.C. § 1962. While Plaintiffs have not cited to any particular subsection of Section 1962 in the SAC, it is apparent from Plaintiffs' parroting of elements that Plaintiffs seek to assert a claim under Section 1962(c). In order to "plead a civil RICO claim under Section 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima v. Imrex Co.*, 473 U.S. 479, 482–83 (1985). Failing to allege adequately any one of these elements must result in dismissal.

---

[18] In addition, Plaintiff Berezkina cannot maintain a breach of contract claim against Aeroflot because she alleges that she purchased travel on FinnAir, not Aeroflot in Count Five, SAC (Dkt. 7 ¶ 154).

Additionally, to state a civil RICO claim a plaintiff must also allege a *domestic* injury to "his business or property by reason of" the alleged racketeering activity, because RICO does not allow recovery for foreign injuries suffered abroad. *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2106 (2016).

Here, Plaintiffs' RICO claim fails because the SAC does not contain sufficient and plausible facts to allege the existence of an enterprise, predicate acts (with requisite specificity), or a pattern of racketeering activity. Moreover, Plaintiffs' RICO claim fails because Plaintiffs alleged only injuries resulting from the alleged racketeering activity that were suffered abroad in Moscow, Russian Federation.

### A.    Plaintiffs Fail to Allege Sufficient Facts to Establish a Distinct "Enterprise."

An "enterprise" under RICO is "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To establish RICO liability, the "enterprise" must be separate and distinct from the "person," *i.e.*, the defendant that is charged with conducting its affairs through a pattern of racketeering activity. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 U.S. 158, 161 (2001); *United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013); *Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 747 F.2d 384, 400-02 (7th Cir. 1984). "Without a difference between the defendant and the 'enterprise' there can be no violation of RICO." *Baker v. IBP, Inc.*, 357 F.3d 685, 692 (7th Cir. 2004); *see also Mervyn v. Atlas Van Lines, Inc.*, 13 C 3587, 2013 WL 5519405 (N.D. Ill. Oct. 2, 2013) (finding plaintiff's allegations define Atlas to be the same as the purported enterprise, and without a difference between the defendant and the enterprise, there can be no RICO violation). Simply put, the "person," *i.e.*, defendant, must have "conducted or participated in the conduct of the '*enterprise's* affairs,' not just [its] own affairs." *Reeves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (emphasis in original). This premise applies particularly to

RICO claims asserted against corporate defendants. "[T]he 'non-identity' or 'distinctiveness' requirement has been described as the 'relatively uncontroversial premise that, for purposes of section 1962(c), a corporation cannot be both the 'enterprise' and the 'person' conducting or participating in the affairs of that 'enterprise.'" *Richmond v. Nationwide Cassel LP*, 52 F.3d 640, 646 n.11 (7th Cir. 1995).

Here, Plaintiffs have failed to allege the existence of a separate and distinct enterprise and, therefore, Plaintiffs' RICO claim fails as a matter of law. Plaintiffs' sole allegation about the purported enterprise appears in Paragraph 330 of the SAC:

> That at all times material hereto, the above-named Defendant, AEROFLOT RUSSIAN AIRLINES, was conducting racketeering activities through the utilization and control over enterprise known as of an enterprise.

(Dkt. 7 ¶ 330.) Putting aside the fact that this allegation is wholly incomprehensible on its face, neither this allegation nor any other in the SAC identifies an "enterprise" that is separate and distinct from Aeroflot as the "person" conducting the affairs of such an enterprise.

In fact, Plaintiffs' other allegations reveal that Plaintiffs are merely challenging Aeroflot's own (alleged) conduct performed for the benefit of Aeroflot and not for some other separate and distinct "enterprise." (*See, e.g. id.* ¶ 325) ("That the above-named plaintiff believe that such modus operandi of the above-named defendant Aeroflot is designed and implemented by Aeroflot in an attempt to increase its present cash-inflow and or obtain an additional cash-in-flow."). Such allegations are precisely what the United States Supreme Court and Seventh Circuit have deemed inadequate to establish the existence of the necessary "enterprise." *See, e.g. Baker*, 357 F.3d at 691 (holding that plaintiffs failed adequately to allege that defendant was conducting the affairs of an enterprise when "[t]he nub of the complaint is that [the defendant] operates *itself* unlawfully."). Even if Aeroflot's conduct were somehow deemed fraudulent – which it was not, as discussed *infra* –, RICO does not penalize such conduct that is not performed for a separate enterprise. *United Food & Commercial Workers Unions*, 719 F.3d at 855 (rejecting a RICO claim where no separate enterprise was identified;

- 29 -

"The Fund cannot bootstrap its allegations of illegal conduct into allegations that [the defendants] conducted the affairs of an enterprise by asking us to infer that because the activities were illegal, they therefore must also have been coordinated activity undertaken on behalf of the [alleged] enterprise.").

Plaintiffs' failure to adequately allege that Aeroflot conducted the affairs of a separate and distinct enterprise is fatal to their RICO claim.

### B. The Complaint Fails to Allege that Aeroflot Engaged in a Pattern of Racketeering Activity, or Even a Single Predicate Act.

Plaintiffs also fail to allege predicate acts, let alone a "pattern of racketeering activity," with sufficient particularity to state a RICO claim.

"Racketeering activity" is defined as "any act or threat involving" specified state law crimes, or any "act" indictable under various specified federal statutes, and certain federal offenses. 18 U.S.C. §1961 (defining "racketeering activity" through exhaustive list of state and federal offenses). The RICO statute defines a "'pattern of racketeering activity' to include engaging in 'at least two' predicate acts in a 10–year period." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 479 (1991) (*quoting* 18 U.S.C. § 1961(5)). Thus, to adequately allege a RICO claim, a plaintiff must essentially allege that the defendant was engaged in "the sort of long-term criminal activity that carries some quantum of threat to society," *i.e.*, something much more than a business or contract dispute arising from a breach of duty or from tortious interference with business relations. *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992). After all, Congress intended RICO to address and stifle the ability of organized crime to infiltrate and gain control of legitimate businesses—not to deal with garden-variety business disputes. *McDonald v. Schnecker*, 18 F.3d 491, 499 (7th Cir. 1994); *see also Midwest Grinding*, 976 F.2d at 1025 ("While it is clear that the scope of civil RICO extends beyond the prototypical mobster or organized crime syndicate, it is equally evident that RICO has not federalized every state common-law cause of action available to remedy business deals gone sour.").

In this case, Plaintiffs have not alleged any conduct or predicate criminal acts that could constitute a violation of the RICO statute. Instead, the SAC conclusorily alleges, without factual support, that there were four types of predicate acts, including the acts of: (1) defrauding Plaintiffs, (2) overcharging Plaintiffs, (3) coercing Plaintiffs, and (4) extorting monies from Plaintiffs by means of coercion and intimidation. (Dkt. 7 ¶ 331.) Nowhere, however, does the SAC identify any specific predicate act spelled out in Section 1961(1).

To the extent Plaintiffs seek to plead wire and/or mail fraud, which are among the more common predicate acts of racketeering pled by plaintiffs asserting civil RICO claims, Plaintiffs must plead each element with the particularity and specificity required by Rule 9(b). *See Slaney v. Int'l Amateur Athletic Fed'n,* 244 F.3d 580, 599 (7th Cir. 2001); *Warden v. McLelland,* 288 F.3d 105, 114 (3d Cir. 2002). To meet the rigorous standard of pleading fraud with particularity pursuant to Rule 9(b), "a RICO plaintiff must allege the identity of the person who made the representation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Slaney,* 244 F.3d at 599; *see also Midwest Grinding Co.,* 976 F.2d at 1020 (7th Cir. 1992) ("[T]he Complaint must, at a minimum, describe the predicate acts with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud" (citations and internal quotation marks omitted)). Moreover, to plead wire fraud or mail fraud, there must be allegations of a scheme and intent to defraud via use of interstate wires or the United States mail system. *See U.S. v. Daniel*, 749 F.3d 608, 613 (7th Cir. 2014) (*citing* 18 U.S.C. §§ 1343, 1341).

Here, Plaintiffs failed to plead wire and/or mail fraud with particularity. Beyond using the "fraud" label repeatedly throughout the SAC, Plaintiffs have not actually alleged or identified any specific communications constituting fraudulent misrepresentations by Aeroflot, let alone alleged the time, place and content of such communications or whether such communications were made via interstate wires or the United States mail system. In fact, multiple allegations in the SAC reveal that

what Plaintiffs are really complaining about are not any misrepresentations, but instead their dissatisfaction with what they incorrectly describe as Aeroflot's poorly organized and/or poorly managed boarding process at Moscow's Sheremetyevo International Airport, Russian Federation. (*See, e.g.,* Dkt. 7 ¶¶ 5 ("baggage registration was and still is very purely [sic] organized by Aeroflot at Moscow Sheremetyevo International Airport"), 326 (alleging that "delay in passengers presentment is actually and de facto caused by Aeroflot's poorly organized, artificially enlarged and deliberately poorly managed boarding process.").  Such assertions of poor management do not constitute "the sort of long-term criminal activity that carries some quantum of threat to society" needed to sustain a RICO claim.  Nor does Plaintiffs speculative "presumption of a scam" suffice to adequately plead such a claim. (*Id.* ¶ 328.)

Accordingly, Plaintiffs' failure to adequately plead predicate acts, let alone a pattern of racketeering activity, requires dismissal of their RICO claim.

### C.    Plaintiffs' Civil RICO Claim Fails Because They Allege Only a Foreign, But Not a *Domestic*, Injury.

In order to bring a civil RICO claim, a plaintiff must allege an injury to his or her "business or property by reason of" the alleged racketeering activity.  18 U.S.C. § 1964(c); *Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp.*, 885 F.3d 1090, 1093 (7th Cir. 2018).  But it is not enough for a RICO plaintiff to just plead such an injury generally.  *Armada*, 885 F.3d at 1093.  The United States Supreme Court recently held that "Section 1964(c) requires a civil RICO plaintiff to allege and prove a *domestic* injury to business or property and does not allow recovery to foreign injuries."  *RJR Nabisco, Inc.*, 136 S. Ct. at 2111 (emphasis added).  Thus, claims that "rest entirely on injury suffered abroad . . . must be dismissed."  *Id.*  While the Supreme Court did not elaborate further on what it meant by "domestic injury," the Seventh Circuit drew hints from *RJR Nabisco*, noting that "domestic" injury connotes "where an injury was *suffered*" and RICO does not provide a right of action "for injuries suffered outside the United States."  *Armada*, 885 F.3d at 1093 (quoting *RJR Nabisco, Inc.*, 136 S. Ct. at 2108).

- 32 -

Since *RJR Nabisco* was decided, "many district courts have done their best to craft a rule for determining which injuries are domestic and which are foreign" and these cases have just begun "percolating up to the courts of appeals." *Armada*, 885 F.3d at 1093. The Second Circuit adopted an approach for tangible property that addresses each individual injury alleged and held that "absent some extraordinary circumstance, the injury is domestic if the plaintiff's property was located in the United States when it was stolen or harmed." *Id.* at 1093-94 (citing *Bascuñán v. Elsaca*, 874 F.3d 806 (2d Cir. 2017)). Without taking a position on the Second Circuit's ruling, the Seventh Circuit in *Armada* noted that the property at issue before it, namely the ability or lack thereof to collect on a breach of contract award obtained against a company that the defendants intentionally caused to go bankrupt, was not tangible because it did not have a "physical existence." *Id.* at 1094. The *Armada* court then held that for intangible property in the nature of the property at issue in that case a party sustains injury at its residence, which for a corporation is its principle place of business. *Id.* at 1094.

In contrast to the property at issue in *Armada*, the property at issue here – reserved airline seats on flights departing from Moscow– had a physical existence *in Russia* and was therefore tangible. Moreover, regardless of how the property at issue in this case is categorized, whether it be a tangible or intangible asset, the alleged *injury* in this case clearly occurred abroad. Indeed, Plaintiffs' allegations make clear that they were denied the ability to board flights departing from Sheremetyvo International Airport in Moscow, causing Plaintiffs to purchase substitute airfare while they were in Moscow, not in the United States. (Dkt. 7 ¶¶ 5, 56, 65, 79-81, 117, 120-121, 132, 135, 140.)[19] Thus, because

---

[19] Plaintiffs allege that Plaintiff Nina Berezkina missed a flight departing from Chicago, Illinois (Dkt 7 ¶ 156, but there is no specific factual allegation that this Plaintiff was required to purchase the substitute airfare that she ultimately received, (*id.* ¶ 158). Plaintiffs' RICO count involves only allegations of alleged fraud causing Plaintiffs to repurchase airfare, not claims based on inconvenience caused by missed flights. (*See id.* ¶¶ 324-25, 328, 331.) Further, while Paragraph 174 of the Class Action Allegations section of the SAC purports to identify a class that includes "such person ordered to purchase new airfare from O'Hare International Airport," there are no factual allegations in the SAC identifying anyone that was actually required to do so.

Plaintiffs have not alleged any *domestic* injuries resulting from racketeering activities, their RICO claim fails for this additional reason and must be dismissed.

**<u>CONCLUSION</u>**

WHEREFORE, Aeroflot respectfully requests that this Court dismiss the Complaint in its entirety pursuant to Rules 12(b)(2) and 12(b)(6).  In the event that any of Plaintiffs' claims survive, Aeroflot requests that this Court strike Plaintiffs' class definitions to the extent they are overly broad and include putative class members whose claims do not arise out of or relate to Aeroflot's contacts with Illinois.

Dated: April 26, 2019

Respectfully submitted,

AEROFLOT RUSSIAN AIRLINES

By:  /s/ Karlin E. Sangdahl

Karlin E. Sangdahl
REED SMITH LLP
10 S. Wacker Drive, Suite 4000
Chicago, IL 60606
(312) 207-1000
ksangdahl@reedsmith.com

Oliver Beiersdorf (*pro hac vice* forthcoming)
REED SMITH LLP
599 Lexington Avenue, 22nd Floor
New York, NY 10022
(212) 521-5400
obeiersdorf@reedsmith.com

*Attorneys for Defendant Aeroflot Russian Airlines*

## CERTIFICATE OF SERVICE

I, Karlin E. Sangdahl, an attorney, state that on April 26, 2019, I electronically filed the foregoing *Memorandum of Law In Support Of Aeroflot's Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint* with the Clerk of the Court using the ECF system which will send notification to all parties.

/s/ Karlin E. Sangdahl