## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DMITRY BANDURIN, et al.,

        Plaintiffs,

        v.

AEROFLOT RUSSIAN AIRLINES, et al.,

        Defendants.

No. 19 CV 255

Judge Manish S. Shah

### MEMORANDUM OPINION AND ORDER

Plaintiffs booked international airline tickets for different flights with defendants Aeroflot, a Russian airline, and Finnair, a Finnish airline. Plaintiffs allege that the airlines subjected them to a series of inconveniences that largely occurred in Moscow, including preventing them from boarding, forcing them to buy new tickets for missed flights, and delivering their checked bags late, damaged, or to the wrong city. Plaintiffs bring claims for delay and injury on behalf of themselves and a proposed nationwide class under the Montreal Convention, a treaty that governs international air transportation. They also bring a breach-of-contract claim against both defendants, and a RICO claim against Aeroflot. The airlines move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim. For the reasons discussed below, Aeroflot's motion to dismiss is granted, and Finnair's motion is denied in part, granted in part.

## I.  Legal Standards

Federal Rule of Civil Procedure 12(b)(2) governs dismissals based on lack of personal jurisdiction. A federal court may exercise personal jurisdiction over a foreign defendant "only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause." *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019). Illinois courts exercise jurisdiction to the limit set by the federal Due Process Clause. *Noboa v. Barcelo Corporacion Empresarial*, 812 F.3d 571, 572 (7th Cir. 2016). When a defendant moves to dismiss based on personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case of jurisdiction. *John Crane, Inc. v. Shein Law Ctr., Ltd.*, 891 F.3d 692, 695 (7th Cir. 2018); *Brook v. McCormley*, 873 F.3d 549, 551–52. (7th Cir. 2017).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, a court must construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 893 (7th Cir. 2018).

2

## II.    Background

### A.    The Bandurins

Dmitry Bandurin, Svetlana Bandurina, and Alexander Bandurin, residents of Aurora, Illinois, bought tickets from Moscow's Sheremetyevo International Airport to Chicago on a Finnair/Aeroflot flight, with a layover in Helsinki. [7] ¶¶ 39, 54, 56, 200–03.[1] The group arrived at their gate in Moscow 19 minutes before boarding ended, but were not allowed on the flight. [7] ¶¶ 56–57, 65, 200, 204. An Aeroflot representative told them to go to Finnair's office in Terminal D for rebooking, but Finnair did not have an office in Terminal D. [7] ¶¶ 59–60. Aeroflot directed the group to buy new tickets at a later departure time. [7] ¶¶ 61, 66, 200, 205. The new tickets cost $2,600 each. [7] ¶¶ 4, 9.

Aeroflot also refused to provide a wheelchair to Bandurina, who was disabled. [7] ¶ 66. As a result, she had to walk a long distance from one terminal to another, and she sustained a physical injury. [7] ¶¶ 345, 347. When she arrived back in Chicago, she required medical treatment, and she had to miss several days of work because of her injury. [7] ¶¶ 349–50.

The Bandurins landed in Chicago more than 24 hours after they were scheduled to arrive; they all missed at least one day of work, and incurred lost wages as a result. [7] ¶¶ 67, 209, 212.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings

### B. Yesdaulet Izenov

Yesdaulet Izenov, a California resident, was scheduled to fly on Aeroflot from Kazakhstan to Chicago, with connections in Moscow and New York. [7] ¶¶ 44, 132–33, 142, 222–23. Izenov left the Moscow airport during his first layover, and arrived at the gate 19 minutes before takeoff. [7] ¶¶ 133–35. The crew shut the boarding door in front of him and several other people standing in line. [7] ¶¶ 136, 221, 225. Izenov missed his connecting flight from New York to Chicago, and had to buy new tickets from Moscow to Los Angeles, and Los Angeles to Chicago. [7] ¶¶ 142–43, 221. He stayed in the Moscow airport overnight to make his new flight. [7] ¶ 144.

Aeroflot representatives told Izenov that his checked bags would be held for him in Los Angeles. [7] ¶ 148. When Izenov arrived in Los Angeles, he learned that his bags were in Sacramento; he then had to go to Sacramento to retrieve his luggage, which was damaged. [7] ¶¶ 149–50, 319, 321. All told, Izenov spent $3,795.78 on rebooking flights and the costs of being delayed. [7] ¶ 152. As a result of missing his original flight, Aeroflot told Izenov that he also lost his return flight to Kazakhstan a few months later. [7] ¶¶ 145–46.

### C. Brent Hanson

Brent Hanson, a Washington state resident, paid $729 for a ticket on a Finnair flight, operated by Aeroflot, from Moscow to Seattle, with a layover in Helsinki. [7] ¶¶ 41, 79–80, 242–43. Hanson arrived at Sheremetyevo Airport at 8:50 a.m. for a 10:35 a.m. flight, and tried to check two suitcases. [7] ¶¶ 81, 245. He spoke to an Aeroflot employee, who told him that he needed to pay an excess baggage fee, and

sent him to a different Aeroflot desk to submit his payment. [7] ¶ 82. The second Aeroflot employee directed him to another Aeroflot representative, who also sent him to someone else. [7] ¶¶ 83–84. That person, the fourth he had spoken to, sent him to the airport's general information desk; a representative there directed him back to the fourth Aeroflot representative, who said she could take his payment and apologized for the mistake. [7] ¶¶ 85–88. The Aeroflot employee did not know how to process Hanson's fee, and had to consult another employee. [7] ¶¶ 89–90. After about 30 minutes, Hanson began expressing concern that he was going to miss his flight, and the Aeroflot employee assured him that he would make it. [7] ¶¶ 90–92. She finished processing his payment at 9:50 a.m., and directed Hanson back to the first Aeroflot employee who had initially taken his suitcases. [7] ¶ 93. Hanson received receipts for his baggage around 10 a.m. and proceeded through security. [7] ¶¶ 93–94. He arrived at his gate 15 minutes before takeoff and was not allowed to board the flight. [7] ¶¶ 95, 246.

Hanson returned to the Aeroflot ticket desk and paid $2,600 for a new flight, to New York. [7] ¶¶ 4, 9, 99, 101–02, 247. An Aeroflot representative said that Hanson's checked bags would be transferred to the new flight. [7] ¶ 101. When Hanson arrived in New York, he discovered his suitcases were missing. [7] ¶¶ 102, 310. A local Aeroflot representative told him that his bags were still in Moscow and would arrive in several days. [7] ¶¶ 103–04.

Hanson took a JetBlue flight to Seattle, and a JetBlue representative created a lost baggage report for him. [7] ¶ 105. Several days later, an American Airlines

5

representative called Hanson and said the airline had Hanson's bags; American transferred the suitcases to JetBlue, and JetBlue delivered them to Hanson's home. [7] ¶¶ 106–07, 311.

### D. Madina Dzugkoeva, Albina Tolparova, and Lana Zangieva

Illinois residents Madina Dzugkoeva, Albina Tolparova, and their baby, Lana Zangieva, were scheduled to fly from Moscow to New York, then New York to Chicago. [7] ¶¶ 42, 114–16, 263–64. The group waited in line at the Moscow airport to check their bags for about 40 minutes, causing them to miss their flight to New York. [7] ¶¶ 118, 120, 263. They each paid $2,600 for a new ticket. [7] ¶¶ 4, 9, 121, 268. They arrived back in Chicago 24 hours later than originally scheduled. [7] ¶ 272.

### E. Nina Berezkina

Nina Berezkina, a Kentucky resident, paid $1,980 for a roundtrip ticket on Finnair from Louisville, Kentucky, to Moscow. [7] ¶¶ 45, 154. Her departing flight had layovers in Chicago and Helsinki. [7] ¶ 154. Berezkina made it to Chicago, but Finnair canceled her flight from Chicago to Helsinki due to mechanical malfunctioning. [7] ¶ 158. Finnair rebooked her on a flight from Chicago to Helsinki, leaving the next day. [7] ¶ 158. Berezkina had prepaid for a train ticket from Moscow to Orenburg, but lost her ticket because she landed in Moscow late. [7] ¶ 159–60. She arrived in Orenburg more than 48 hours later than originally planned and missed the family gathering that had been the reason for her trip. [7] ¶ 163.

Plaintiffs bring putative class actions against Aeroflot and Finnair. Each group of plaintiffs brings one count on behalf of itself and others under Article 19 of the

Montreal Convention for flight delays. [7] ¶¶ 199–291. Hanson and Izenov each bring an individual and class claim against Aeroflot under Article 17(2) of the Montreal Convention for delay in transporting baggage. [7] ¶¶ 307–22. Svetlana Bandurina brings an individual and class claim against Aeroflot under Article 17(1) of the Montreal Convention for an injury suffered while boarding. [7] ¶¶ 342–60. Finally, all named plaintiffs bring individual and class claims for breach of contract against both airlines and a RICO claim against Aeroflot. [7] ¶¶ 292–306, 323–341.

## III. Analysis

Both airlines move to dismiss all claims. In the alternative, they move to strike the class definitions because, defendants say, they are overly broad and include unnamed plaintiffs whose claims do not arise out of the airlines' contacts with Illinois.

The airlines argue that the court lacks personal jurisdiction with regard to the majority of plaintiffs' claims.[2] The airlines also argue that plaintiffs have failed to state a claim because they do not plead the necessary elements for their claims under Articles 17 or 19 of the Montreal Convention. They argue that plaintiffs' breach-of-contract claims must be dismissed because plaintiffs fail to identify what contract term was breached. Finally, they argue that plaintiffs have failed to plead the necessary elements of a RICO case.

---

[2] Aeroflot asserts lack of personal jurisdiction as to all plaintiffs except the Bandurin plaintiffs. Finnair only addresses the plaintiffs who assert claims against it—the Bandurins, Hanson, and Berezkina—and moves under 12(b)(2) with regard only to Hanson. Both airlines thus waive any objection based on lack of personal jurisdiction as to the Bandurins, and Finnair waives any personal-jurisdiction argument as to Berezkina. Fed. R. Civ. P. 12(h)(1).

### A.    Personal Jurisdiction

The Due Process Clause allows personal jurisdiction over an out-of-state defendant if the defendant has "certain minimum contacts" with the state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 697 (7th Cir. 2015) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). There are two types of personal jurisdiction: general and specific. *Id.* at 697–98. General jurisdiction exists when the party's contacts with the state where the suit is brought "are so constant and pervasive as to render it essentially at home" in that state. *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). A corporation is at home in the corporation's principal place of business and the state of its incorporation. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Kipp*, 783 F.3d at 698. It is "rare" for a corporation to be at home in a state other than its principal place of business or state of incorporation. *Kipp*, 783 F.3d at 699. A plaintiff must show more than a defendant's "substantial, continuous, and systematic course of business" in a state to establish general jurisdiction. *Id.* at 698 (quoting *Daimler*, 571 U.S. at 134).

Specific jurisdiction is case specific. *Id.* It depends on an "affiliation between the forum and the underlying controversy," such as an activity or occurrence that "takes place in the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 n.6 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). To establish specific personal jurisdiction, the plaintiff must show the defendant's contacts with Illinois "related to the challenged conduct." *John Crane, Inc.*, 891 F.3d

8

at 695; *Kipp*, 783 F.3d at 698 (claim must be linked to "the activities or contacts with the forum"); *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) ("[D]efendant's contacts with the forum state must 'directly relate to the challenged conduct or transaction.'" (quoting *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010)). In other words, a court has specific personal jurisdiction where the defendant has "purposefully availed himself of the privilege of conducting business" in the forum state, and "the alleged injury arises out of the defendant's forum-related activities." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010).

          1.    *General Jurisdiction*

    Aeroflot is headquartered in Russia, and Russia is its principal place of business. Finnair's headquarters are in Finland, which is also its principal place of business. Thus, for an Illinois court to exercise general personal jurisdiction, plaintiffs would have to show that this is an "exceptional case." *Daimler*, 571 U.S. at 139 n.19. Plaintiffs have failed to meet their burden. They assert that the airlines maintain "minimum contacts" with Illinois through their "air transportation business," which includes "air travel operations, offices, logistical services, sales, and marketing efforts." [7] ¶ 36. But plaintiffs offer no information at all about the extent or frequency of the airlines' contacts with Illinois. While it can be inferred that the airlines operate flights in and out of Chicago with at least some regularity, even continuous and systematic contacts with a state do not establish that the company is essentially at home here. If Aeroflot and Finnair were essentially at home in Illinois just by virtue of operating flights to and from Chicago, they'd be essentially at home

in every state where they fly. General personal jurisdiction does not sweep that broadly. *See Daimler*, 571 U.S. at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them."). Plaintiffs have failed to establish general personal jurisdiction over Aeroflot and Finnair.

### 2. *Specific Jurisdiction*

The court also lacks specific personal jurisdiction over the airlines with regard to the claims brought by Izenov, Hanson, Dzugkoeva, Tolparova, and Zangieva. The airlines had little or no contact with Illinois in the circumstances underlying all of those plaintiffs' claims.

For example, Aeroflot employees would not allow Izenov to board his flight from Moscow to New York. He had to buy a new ticket, in Moscow, which was to Los Angeles. Once in Los Angeles, he went to Sacramento to retrieve his baggage. All of Aeroflot's claim-related conduct for any of Izenov's claims occurred either in Moscow, where Aeroflot denied him access to his flight and made him buy a new ticket, or California, where he had to track down his misplaced luggage. Aeroflot had no interaction with Illinois that was related to Izenov's claims, so there is no specific personal jurisdiction over Aeroflot with regard to any of Izenov's claims.

Likewise, Hanson's claims implicate Aeroflot employees' conduct in Moscow, New York, and Seattle, but not Illinois. Hanson's claims arise out of Aeroflot's onerous process to check and pay for his bags in Moscow, and Aeroflot's refusal to allow him to board his flight when he arrived at the gate. He then flew to New York, where an Aeroflot employee told him his bags were still in Moscow. JetBlue

10

eventually delivered Hanson's luggage to his home in Seattle. Hanson himself had no connection to Illinois, and the airlines likewise had no contact with the state in connection with any of Hanson's claims.

Finally, Aeroflot's conduct regarding Dzugkoeva, Tolparova, and Zangieva's claim occurred in Moscow: denying the group access to their plane from Moscow to New York. Plaintiffs fail to identify any Illinois contacts regarding this claim either. And, although this group of plaintiffs lives in Illinois (unlike Hanson and Izenov), the "defendant's relationship with the plaintiff is not sufficient" to establish minimum contacts for specific jurisdiction. *Brook*, 873 F.3d at 552–53. Rather, "the relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Id.* (quoting *Walden*, 571 U.S. at 284). So that the plaintiffs live in Illinois does not establish any connection to the state on the part of the airlines. Plaintiffs have not established personal jurisdiction over the airlines, absent any claim-related contact with Illinois.

Plaintiffs respond to the airlines' arguments about both specific and general jurisdiction by arguing that the court has personal jurisdiction under the Montreal Convention's jurisdictional provision. *See* Convention for the Unification of Certain Rules for International Carriage by Air art. 33(1), May 28, 1999, S. Treaty Doc. No. 106–45, 2242 U.N.T.S. 350.[3] But that provision confers subject-matter jurisdiction,

---

[3] That provision provides:

> An action for damages must be brought, at the option of the plaintiff, in the territory of one of the States Parties, either before the court of the domicile of the carrier or of its principal place of business, or where it has a place of

not personal jurisdiction. *See Royal & Sun All. Ins. PLC v. UPS Supply Chain Sols., Inc.*, No. 16 CIV. 9791, 2018 WL 1888483, at *3 (S.D.N.Y. Apr. 5, 2018) ("[C]ourts have consistently concluded that the Montreal Convention affords subject matter jurisdiction, *not* personal jurisdiction." (collecting cases)). Plaintiffs also argue that they have established diversity jurisdiction under the Class Action Fairness Act. But diversity jurisdiction is not at issue here, and again, CAFA provides a court with subject-matter, not personal, jurisdiction. *See Roppo v. Travelers Comm'l Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017) (noting that CAFA "creat[es] federal subject matter jurisdiction"). The airlines' motion to dismiss is a motion under Rule 12(b)(2) for lack of personal jurisdiction, not Rule 12(b)(1) for lack of subject-matter jurisdiction. That a court has subject-matter jurisdiction does not mean it also has personal jurisdiction. There must be a basis for each.

The airlines' motions to dismiss all claims asserted by Izenov, Hanson, Dzugkoeva, Tolparova, and Zangieva are granted for lack of personal jurisdiction. Aeroflot also moves to dismiss all of Berezkina's claims against it because Berezkina booked a Finnair flight and only asserts a claim against Finnair. That motion is granted.

## B.    Failure to State a Claim

The following claims survive the airlines' motions to dismiss for lack of personal jurisdiction: Svetlana Bandurina's Article 17 claim against Aeroflot; the

---

business through which the contract has been made or before the court at the place of destination.

Montreal Convention, 2242 U.N.T.S. at 361.

Bandurin group's Article 19 claim against Aeroflot and Finnair; Berezkina's Article 19 claim against Finnair; the Bandurin group's RICO claim against Aeroflot; the Bandurin group's breach-of-contract claim against both airlines; and Berezkina's breach-of-contract claim against Finnair.

### 1. The Article 17 Claim

Article 17(1) of the Montreal Convention makes airline carriers liable for "death or bodily injury of a passenger" only if the accident that caused the injury "took place on board" or "in the course of any of the operations of embarking or disembarking." Montreal Convention, 2242 U.N.T.S. at 355. To state a claim under Article 17, a plaintiff must establish (1) an accident, (2) that caused death or bodily injury, (3) while on board the plane or while embarking or disembarking. *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1172 (11th Cir. 2014). A plaintiff cannot recover under Article 17 if she alleges only mental injuries, unaccompanied by physical injury. *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 552 (1991).

Aeroflot moves to dismiss because Bandurina has not adequately alleged that she suffered a physical injury (rather than a mental one), or that her accident took place while embarking. Bandurina argues she has stated a claim because she suffered an injury while embarking on her original flight from Moscow to Chicago. [26] at 41. She contends that she had to walk between terminals at the Moscow airport, causing her to experience severe pain, suffering, and bodily injury.

Bandurina has plausibly pleaded that she suffered a physical injury. She alleges that she was disabled, that she needed a wheelchair and was denied access to

13

one, and that she had to walk a relatively long distance without any assistance. She also pleads that she needed medical treatment when she returned home as a result of having to walk through the airport, and that she had to miss several days of work. Given those allegations, it is plausible that Bandurina suffered a physical injury from having to walk without the aid that she needed.

But Bandurina has not adequately pleaded that she was embarking when she suffered an injury. The treaty does not define embarkation or disembarkation. *Campbell*, 760 F.3d at 1173. Thus, to determine whether a plaintiff was "embarking," courts generally look to the totality of the circumstances, with a particular emphasis on the plaintiff's location when the injury occurred, whether her activity was related to the process of embarking, and how much control the airline exercised at the time of the accident. *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 617–18 (7th Cir. 1989); *see also Campbell*, 760 F.3d at 1173–74.[4] Some courts look to whether the plaintiff was close in time to boarding the plane; this emphasis on imminence requires "a close connection between the accident and the physical act of boarding the aircraft." *Campbell*, 760 F.3d at 1173 (quoting *Marotte v. Am. Airlines, Inc.*, 296 F.3d 1255, 1260 (11th Cir. 2002)).

---

[4] *Schroeder* considered Article 17 of the Warsaw Convention, the predecessor to the Montreal Convention. The provisions are largely identical. *Compare* Montreal Convention, 2242 U.N.T.S. at 355 *with* Convention for the Unification of Certain Rules Relating to International Transportation by Air art. 17(1), Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934). Courts "routinely" rely on Warsaw Convention precedent "where the equivalent provision in the Montreal Convention is substantively the same." *Shabotinsky v. Deutsche Lufthansa AG*, 245 F.Supp.3d 1018, 1023 n.3 (N.D. Ill. 2017) (quoting *Narayanan v. British Airways*, 747 F.3d 1125, 1127 n.2 (9th Cir. 2014)).

Here, Bandurina claims she sustained an injury while embarking on Finnair Flight 6840/Aeroflot 2206, the original flight that she was not allowed to board. But as I read the complaint, her alleged injury occurred after she was denied access to that flight, when she was walking away from the departure gate to buy a new ticket in a different terminal. Thus, neither location, control, activity, nor imminence suggest that Bandurina's injury occurred either in the lead up to or during the boarding process. Walking between terminals is not related to embarking on an airplane. To the contrary, Bandurina was walking away to find a new ticket. Leaving the departure gate is the opposite of embarking on the airplane parked there. And Bandurina does not allege that Aeroflot had any control over the area in which her injury occurred, the passageways between terminals. Nor was Aeroflot exercising any control over Bandurina herself at that point. Since Aeroflot was not arranging for substitute transportation, but rather forcing the Bandurins to buy new tickets, the group had no association with Aeroflot and could have purchased new return tickets from any airline. After leaving the gate for her original flight, Bandurina was a "free agent[] roaming at will through the terminal." *Campbell*, 760 F.3d at 1174 (quoting *Day v. Trans World Airlines*, *Inc.*, 528 F.3d 31, 33 (2d Cir. 1975)). Finally, imminence weighs against Bandurina. Her injury presumably occurred after her original flight took off—the flight that she alleges she was injured while embarking on. Given the totality of the circumstances, Bandurina was not embarking when her injury occurred. *See id.* at 1173 (finding plaintiff was not embarking because he "was not engaged in an activity characteristic of boarding"); *Schroeder*, 875 F.2d at 618 (same,

15

where the injury occurred "in the terminal building, away from the airplane"); *see also McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 317–18 (1st Cir. 1995) (same, where the injury "happened at a considerable distance from the departure gate").

Because Bandurina has failed to plead that her injury occurred while she was embarking, she has failed to state an Article 17 claim.

### 2. *The Article 19 Claims*

Article 19 provides that airline carriers shall be liable for "delay" of "passengers, baggage or cargo." Montreal Convention, 2242 U.N.T.S. at 356. Article 19 applies only to claims asserting delay, not "total nonperformance of a contract." *Wolgel v. Mexicana Airlines*, 821 F.2d 442, 445 (7th Cir. 1987). The analysis turns on whether the airline "failed completely to perform under the contract," or "merely caused a delay in the passenger's arrival." *Shabotinsky v. Deutsche Lufthansa AG*, 245 F.Supp.3d 1018, 1022–23 (N.D. Ill. 2017).

### a. The Bandurins

The airlines argue that the Bandurins have failed to state a claim under Article 19 because they were denied boarding, constituting nonperformance, not delay. I agree.

The Bandurins' original flight was not delayed. The Bandurins arrived at the departure gate before takeoff, but Aeroflot employees would not allow them to board the flight. Aeroflot did not honor the Bandurins' tickets; that is nonperformance of a contract. That the Bandurins eventually landed in Chicago on a different flight does

16

not mean they were delayed within the meaning of Article 19.[5] Article 19 typically applies when an airline transfers a missed reservation to a new flight at no additional cost and the plaintiff reaches her destination late. But that's not what happened here. Aeroflot did not arrange substitute transportation for the Bandurins or transfer their reservations to a new flight. It directed them to find the Finnair desk and buy entirely new tickets. The Bandurins entered into new, distinct contracts for a separate flight. They could have done so with any airline. *See also Irabor v. Lufthansa Airlines*, No. CV 19-12087, 2019 WL 6619197, at *6 (D. Mass. Dec. 5, 2019) ("Several courts have held that where an airline prevents a plaintiff from boarding a flight and does not offer alternate travel arrangements, then the plaintiff's claim arises out of nonperformance." (collecting cases)).

Plaintiffs argue that they have stated a claim for delay because they were not "bumped" from their flight, the situation that the Court of Appeals held constituted nonperformance, rather than delay, in *Wolgel*, 821 F.2d at 445. In that case, the plaintiffs' original flight was overbooked, and they were denied boarding. The court held that the plaintiffs were not attempting to "recover for injuries caused by their delay"; their complaint was based on the fact that "they never left the airport." *Id.* *Wolgel* does not stand for the proposition that "bumping" is the only situation in which an airline's failure to allow boarding could conceivably constitute a breach of contract

---

[5] The complaint does not specify whether the Bandurins' substitute flight was an Aeroflot or Finnair flight, but says that Aeroflot directed the group to the Finnair desk to buy new tickets. Since I must draw all inferences in plaintiffs' favor, I assume the substitute flight was operated by Finnair or Aeroflot.

rather than a delay. *Wolgel* merely drew a distinction between "nonperformance" and "delay," and categorized the situation at issue there as nonperformance. So too here. The Bandurins' claim sounds in nonperformance, not delay, and *Wolgel* does not change that outcome.

> b.   Berezkina

Finnair appears to move to dismiss Berezkina's claim under Rule 12(b)(6), but does not say why Berezkina has failed to state a claim for delay. [21] at 13–15. Berezkina alleges that her original flight was canceled due to a mechanical malfunction, and Finnair rebooked her on a flight leaving for Moscow the next day. That is sufficient to state an Article 19 claim. *See Shabotinsky*, 245 F.Supp.3d at 1023 (finding Article 19 applied where airline canceled plaintiff's initial flight and rebooked him on a flight leaving four hours later).

Finnair argues that Berezkina's damages should be limited, and I agree. Recovery under Article 19 is limited to economic damages. *Campbell*, 760 F.3d at 1170 ("Article 19 permits the payment of economic damages but does not contemplate compensation for emotional loss or physical injury."). Finnair concedes that Berezkina has adequately alleged economic damages in the form of her prepaid train tickets to Orenburg, [17] at 21. But Berezkina also pleads that she suffered a litany of other damages, such as: "various actual, general, special, incidental and consequential damages," [7] ¶¶ 285, 291; "compensable economic actual and general damages and financial injuries," [7] ¶ 287; and damages for "physical inconvenience, physical discomfort, pain, exhaustion, loss of time, frustration of purpose to travel,

18

anxiety, frustration, uncertainty, loss of use of money and other cognizable legal damages, losses and injuries." [7] ¶ 288.[6] Most of those damages are not compensable under Article 19. That Berezkina's damages would be limited to economic damages, however, does not mean (and Finnair does not argue) that the chance of a relatively small recovery is a basis to dismiss the claim. "The Convention does not mention, and we know of no court that has imposed, a *de minimis* requirement for an otherwise validly pled Article 19 claim." *Campbell*, 760 F.3d at 1170 (allowing Article 19 claim for $150 in economic damages to proceed).

Because Berezkina has adequately pleaded that she suffered a flight delay and at least some measure of economic damages, Finnair's motion to dismiss Berezkina's claim is denied.

### 3. The RICO Claim

The RICO statute makes it unlawful for "any person employed by or associated with any enterprise" to conduct that enterprise's affairs "through a pattern of racketeering activity." 18 U.S.C. § 1962(c). So to state a RICO claim, plaintiffs must plausibly allege (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 336 (7th Cir. 2019).

---

[6] Damages are also capped in the treaty at 4,150 Special Drawing Rights. Montreal Convention, 2242 U.N.T.S. at 357. A Special Drawing Right is an artificial currency; its value is determined at the date of the judgment. *Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co.*, 522 F.3d 776, 779 (7th Cir. 2008). The parties agree that 4,150 Special Drawing Rights amounts to about $6,400. [7] at 55; [21] at 7.

The RICO claim is asserted against Aeroflot, and as discussed, personal jurisdiction exists only over the Bandurins' claim. They argue that Aeroflot devised a scheme to force passengers to wait in long lines to check their luggage and then pay the fee for checked bags. As part of this scheme, plaintiffs say, Aeroflot regularly refused to let passengers board if they arrived less than 20 minutes before departure, forcing those passengers to buy new tickets. Aeroflot argues that plaintiffs have failed to plead the existence of an enterprise, any predicate acts, or a pattern of racketeering. It also urges dismissal because RICO applies only to domestic injuries, and defendants say the Bandurin group has alleged only foreign injuries. Plaintiffs have plausibly pleaded that they suffered a domestic injury. But they have failed to identify either a distinct enterprise or predicate acts of racketeering, so their claim is dismissed.

a.     Enterprise

RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact requires only a "purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009).

To adequately plead enterprise, a plaintiff must identify a "person" that is "distinct from the RICO enterprise." *Roppo*, 869 F.3d at 588 (quoting *United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen*

20

*Co.*, 719 F.3d 849, 853 (7th Cir. 2013)); *Baker v. IBP, Inc.*, 357 F.3d 685, 692 (7th Cir. 2004) ("Without a difference between the defendant and the 'enterprise' there can be no violation of RICO."). That is because RICO liability "depends on showing that the defendants conducted or participated in the conduct of the *enterprise's* affairs, not just their *own* affairs." *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 398–99 (7th Cir. 2009) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)). And the defendant "person" must have participated "in the operation or management of the distinct enterprise." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 655 (7th Cir. 2015).

The Bandurins fail to identify any distinct entity that engaged in alleged misconduct other than Aeroflot itself. They argue that Aeroflot devised a scheme to boost its profits by prohibiting customers from boarding their flights and forcing them to buy a second ticket. They attribute these actions only to Aeroflot, but Aeroflot cannot be both the person and the enterprise. Plaintiffs have alleged only that Aeroflot participated in its own affairs, not the affairs of a separate, distinct entity. They thus fail to plead a RICO claim. *See Sheikh v. Wheeler*, No. 19-1851, 2019 WL 5296368, at *2 (7th Cir. Oct. 18, 2019) (upholding dismissal of RICO complaint where plaintiff failed to "plausibly plead the existence of even an informal enterprise"); *United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013) (same).

b.     Pattern of Racketeering Activity

To plead a pattern of racketeering activity, a plaintiff must allege two predicate acts. *Lachmund v. ADM Inv'r Servs., Inc.*, 191 F.3d 777, 784 (7th Cir. 1999). Those acts must be listed in 18 U.S.C. § 1961(1), and the defendant must have committed at least two of those acts within a ten-year period. 18 U.S.C. § 1961(5); *Bible*, 799 F.3d at 659. If the predicate acts sound in fraud, as plaintiffs' claim does here, they "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Plaintiffs must describe the "who, what, when, where, and how" of the fraud. *Menzies*, 943 F.3d at 338 (quoting *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019)).

Here, the Bandurin plaintiffs have not adequately identified underlying predicate acts of racketeering. They assert that Aeroflot defrauded, overcharged, coerced, and extorted them. [26] at 31–32; [7] ¶ 331. Of those four acts, only fraud and extortion are predicates under RICO. And plaintiffs' allegations do not support their claim that Aeroflot extorted them. Generally, extortion occurs when someone "uses physical violence or the threat of violence to obtain property." *Rennell v. Rowe*, 635 F.3d 1008, 1012 (7th Cir. 2011); *see also* 18 U.S.C. § 1951(b)(2) (defining extortion as "the obtaining of property from another, with his consent, induced by the wrongful use of actual or threatened force, violence or fear, or under color of official right"). Plaintiffs do not remotely allege that Aeroflot or Finnair threatened them with violence or acted violently toward them to obtain their airline payments.

22

That just leaves fraud. Fraud can serve as a predicate act for a civil RICO claim. But it must be pleaded with particularity, and plaintiffs do not meet that standard. At the outset, plaintiffs do not identify what theory of fraud they are alleging. The RICO statute lists several varieties of fraud: mail, wire, securities, etc. Beyond that defect, plaintiffs do not describe any particular fraudulent acts with the required specificity. They do not identify any person who committed an act of fraud, when or where any such act occurred, what the underlying act of fraud actually was, or the use of U.S. mail or interstate wires. Without providing the necessary description of fraudulent acts, plaintiffs have failed to adequately allege any racketeering activity. *See Chambers v. Habitat Co.*, 68 Fed. App'x 711, 716 (7th Cir. 2003) (affirming dismissal of RICO claim where plaintiff did not allege "any predicate acts" constituting mail fraud); *Lachmund*, 191 F.3d at 784 (same, where complaint did not identify the "specific content" of any fraudulent misrepresentations, the identities of the parties to the misrepresentations, or the "specific times or places" of fraud); *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 730 (7th Cir. 1998) (same).

Plaintiffs argue that they established the "pattern" element of a RICO claim because they alleged repeated racketeering activity that extended over a substantial period of time, amounting to a threat of continued activity. [26] at 33. But that argument is not responsive to Aeroflot's motion to dismiss. And plaintiffs cannot establish a pattern of racketeering activity without identifying acts that qualify as racketeering activity, and pleading fraud with particularity.

23

c.     Injury

Aeroflot also argues that plaintiffs cannot state a civil RICO claim because they have not alleged that they suffered a domestic injury. Plaintiffs do not respond to this argument, so any argument they might assert in response is forfeited. *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) ("[A] party generally forfeits an argument or issue not raised in response to a motion to dismiss.").

The RICO statute requires a plaintiff to have suffered an injury to "his business or property" because of the racketeering activity. 18 U.S.C. § 1964(c); *Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp.*, 885 F.3d 1090, 1093 (7th Cir. 2018). That injury must be "domestic." *RJR Nabisco, Inc. v. European Cmty.*, 136 S.Ct. 2090, 2111 (2016). The focus is on "where the injury is suffered." *Armada*, 885 F.3d at 1094.

Here, it is plausible that the Bandurin plaintiffs suffered a domestic injury. They say they were injured because they had to buy new plane tickets at their own expense. Their injury was the loss of their money—tangible property—as a result of Aeroflot's allegedly fraudulent actions. The Bandurins live in Illinois, which supports an inference that their bank accounts are located in the United States. The Bandurins' money was located in the United States when Aeroflot forced them to buy new plane tickets, the alleged harm. So, they suffered a domestic injury. True, they paid for their new airfare at the Moscow airport. But plaintiffs presumably felt the effects of unexpectedly paying thousands of dollars for new airfare long after the exact moment they made the purchase. They arrived in Chicago only one day after paying

24

for new tickets and would have had to cope, for at least some amount of time, with the loss of money they hadn't expected to spend.

Aeroflot argues that any injury occurred abroad, because plaintiffs were denied boarding in Moscow and paid for new tickets in Moscow. But the correct inquiry is not "where the injurious conduct took place," but where the plaintiff "suffered the injury." *Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694, 706 (3d Cir. 2018) (noting the "general consensus among the courts that have had to apply *RJR Nabisco*" that the location of the injury is not the location of the conduct); *Martin Hilti Family Tr. v. Knoedler Gallery, LLC*, 386 F.Supp.3d 319, 347 (S.D.N.Y. 2019) ("The 'domestic injury' analysis turns on the location of the plaintiff's property when it was harmed, *not* on the location where the defendant's misconduct took place."). Aeroflot focuses on where the injurious conduct took place, rather than where plaintiffs suffered the injury. At a minimum, the Bandurins have plausibly pleaded that they suffered a domestic injury.

But because the Bandurins have failed to plead the existence of an enterprise or pleaded predicate acts of fraud with particularity, their RICO claim is dismissed.

### 4.    *The Breach-of-Contract Claims*

To state a claim for breach of contract, a party must allege (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) damages. *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 858 (7th Cir. 2019). A breach-of-contract claim "requires an identifiable breach of a

25

contract term." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614–615 (7th Cir. 2019).

The airlines argue that plaintiffs have failed to state a claim for breach of contract because plaintiffs do not identify what contractual term the airlines breached. Plaintiffs allege that the airlines were under a "voluntary assumed contractual duty" and a "binding legal contract for international airfare transportation." [7] ¶¶ 294–95. So, plaintiffs say, the airlines were under a contractual duty to compensate passengers "for damages caused by delay" under Article 19 of the Montreal Convention. [7] ¶¶ 294–306. Plaintiffs also contend that their breach-of-contract claim does not arise under the contract of carriage for each passenger, but under Article 125 of the Russian Air Code. That provision provides that a passenger may make a claim against an airline carrier "in case of cessation of the contract of carriage of passengers on the carrier's initiative." Vozdushnyi Kodeks Rossiiskoi Federatsii [VOK RF] [Air Code] art. 125 (Russ.).

I agree with defendants. At a minimum, plaintiffs must identify what contract existed between themselves and the airlines, and identify the term that the airlines allegedly breached. Plaintiffs do not explain what contractual duties the airlines assumed when the passengers purchased their tickets, other than vaguely referencing a voluntary contractual duty. They do not point, for example, to any terms or conditions attached to their tickets. Their reference to Article 19 provides no guidance, as Article 19 governs delay, not nonperformance of a contract. And the Russian Aviation Code is not a contract, and does not impose any contractual

26

obligation on the airlines. The provision of the code plaintiffs point to creates a right of action for a passenger to sue an airline if the airline fails to honor its contract of carriage for that passenger—but plaintiffs do not identify any contract of carriage that the airlines breached. Without identifying the existence of any contract, or specifying what term was allegedly breached, plaintiffs have failed to state a claim for breach of contract. *See Pugh v. Chi. Teachers Union*, No. 10 C 7176, 2012 WL 1623222, at *4 (N.D. Ill. May 8, 2012) (dismissing breach-of-contract complaint where plaintiff "d[id] not identify what contract she had" with the defendants or "what actions in particular by defendants breached a contract"); *Grabianski v. Bally Total Fitness Holding Corp.*, 891 F.Supp.2d 1036, 1046 (N.D. Ill. 2012) (same, where plaintiff did not "specify what contract terms" the defendant breached).

### C.    Motion to Strike

The airlines move to strike plaintiffs' class definitions on the basis that they are overly broad and the court lacks personal jurisdiction over some unnamed plaintiffs. That motion is denied. The only remaining plaintiff in this case is Berezkina. While Berezkina may not ultimately be able to represent a class as broad as the one alleged in the complaint, that is not an issue I need to address at the motion-to-dismiss stage of the case. Finnair has preserved its personal-jurisdiction argument. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1784 (2017) (leaving open the scope of the Fifth Amendment restrictions on the exercise of personal jurisdiction by a federal court). If Berezkina

seeks to certify a class at a later point, I will consider personal jurisdiction and the scope of the class then.

### D. Leave to Amend

Ordinarily, an initial dismissal for failure to state a claim should be without prejudice, and leave to amend should be freely given. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 518 (7th Cir. 2015). But it need not be granted when amendment would be futile. *Hongbo Han v. United Cont'l Holdings, Inc.*, 762 F.3d 598, 603 (7th Cir. 2014). Here, there is no reason to permit plaintiffs to amend their complaint. Plaintiffs cannot plead any additional facts to establish personal jurisdiction over the airlines with regard to the claims asserted by Hanson, Dzugkoeva, Tolparova, Zangieva, or Izenov. In responding to the motion to dismiss, plaintiffs do not suggest what additional facts they could allege to salvage their RICO, breach-of-contract, or Montreal Convention claims. Plaintiffs have filed a complaint, a first amended complaint, and a second amended complaint. There is no reason to think that they have left something out on the issues resolved here. The dismissals for failure to state a claim are with prejudice.

## IV. Conclusion

The airlines' motions to dismiss, [15], [20], are granted in part, denied in part. Claims Two, Three, Four, Seven, and Eight are dismissed for lack of personal jurisdiction. Claims One, Six, Nine, and Ten are dismissed with prejudice for failure to state a claim. All claims against Aeroflot are dismissed. Claim Five, Berezkina's Article 19 claim against Finnair, is not dismissed. The clerk shall correct the docket

to reflect that Berezkina and Finnair are the only remaining parties. A status hearing

is set for February 6, 2020 at 9:30 a.m.

ENTER:

Manish S. Shah
United States District Judge

Date: January 22, 2020

29